BEFORE THE SECOND DIVISION, NOVEMBER 7, 1952

**No. 56928.**—Geo. S. Bush & Co., Inc. v. United States, protest 173147–K (Seattle).

FORD, Judge: The suit listed above was filed by the plaintiff seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of merchandise which was classified by the collector as handkerchiefs or woven mufflers, wholly or in chief value of silk, hemmed or hemstitched. Under this classification the collector levied duty upon the merchandise at the rate of 60 per centum ad valorem under the provisions of paragraph 1209 of the Tariff Act of 1930.

In its protest the plaintiff claims that the merchandise is dutiable at 35 per centum ad valorem under paragraph 1210 or paragraph 1211, as modified, of the Tariff Act of 1930, relating respectively to wearing apparel and manufactures of silk, or at 50 per centum ad valorem under paragraph 1529 (a) of said act, as modified, as ornaments. The protest also contains the general claim that it is dutiable at 10 or 20 per centum ad valorem under paragraph 1558 as unenumerated unmanufactured articles, or articles manufactured in whole or in part, not specially provided for.

It is observed that the involved merchandise was entered on September 6, 1949, and the entry was liquidated on March 28, 1951. The General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, became effective on January 1, 1948. By this agreement the duty on handkerchiefs and woven mufflers, wholly or in chief value of silk, finished or unfinished, and valued at more than $5 per dozen, was reduced to 25 per centum ad valorem, if not hemmed, and to 27½ per centum ad valorem, if hemmed or hemstitched. It is therefore clear that the collector found that the involved merchandise was valued at less than $5 per dozen. This finding is supported by the official record before us, and since the plaintiff offered no evidence to contradict this finding it must be accepted. Having found that the merchandise was valued at not over $5 per dozen, the collector was correct in assessing duty at the rate provided for in the original paragraph 1209 of the Tariff Act of 1930 and in denying to this merchandise the benefits provided in the General Agreement on Tariffs and Trade, *supra.*

At the trial, one witness testified for the plaintiff that she has been employed for the past 10 years by Best's Apparel, which operates a specialty shop; that she was familiar with the merchandise in question and that it comes in 42 different colors; that the staple colors are obtained from a local scarf house, but that all these fantastic colors are made only in France; that they are used to accentuate colors in women's costumes, being sold mostly in pairs; that as a rule young girls will buy one to pick up a color on her skirt or sweater and will tie them around their neck with a small knot, but most of them are sold in pairs; that they pick up the color of the outfit and they also pick up a color that compliments the woman's complexion or wardrobe; that they are a fill-in for a suit, and they are

tied in a knot at each corner, leaving very little bulk at the back of the neck where a scarf usually feels bulky.

Through this witness there was offered and admitted in evidence as illustrative exhibit 1, a sample typical of the imported merchandise. There was also admitted in evidence as illustrative exhibit 2, a sample of that which the witness described as "the domestic square, the domestic scarf," which was purchased from Strauss & Mueller of New York, N. Y.

The witness testified further that Strauss & Mueller is strictly a scarf house that does not sell handkerchiefs; that Best's Apparel does not sell articles like illustrative exhibit 1 in the same department in which they sell handkerchiefs; that she buys handkerchiefs as well as scarfs; that there is a great deal of difference between a handkerchief and a scarf; that a handkerchief is something you use for your nose; that lacy and elaborate evening handkerchiefs are carried tucked under a bracelet or belt or hanging from a pocketbook and are not large enough to be wrapped around the neck like illustrative exhibit 1; that Best's Apparel would never buy handkerchiefs in all of the colors of the imported articles now in question, and that she had never seen articles like illustrative exhibit 1 being used in the manner that handkerchiefs are commonly used; that this merchandise was ordered as 18-inch squares, and that if they received what they wanted, their being called "handkerchiefs" on the confirmation or invoice would not have led to a rejection of the merchandise.

Based upon the record as set out above, the plaintiff contends that "* * * these imported squares are not handkerchiefs nor, in their imported condition, mufflers, and are not susceptible of use as such, nor so used, * * *" and that the protest should be sustained and the merchandise held dutiable under paragraph 1210, as silk wearing apparel, not specially provided for.

In support of its contention, counsel for the plaintiff quotes in its brief filed herein, a number of definitions of the words "muffler," "muffle," "muff," and "scarf." It appears significant that the plaintiff failed to quote a single definition of the word "handkerchief." Counsel for the defendant, in its brief filed herein, quotes the following definition of the term "handkerchief" as found in Webster's New International Dictionary, 1949:

Handkerchief. 1. A small piece of cloth usually square and often embroidered or laced, carried for wiping the face, nose, or eyes. 2. A piece of cloth shaped like a handkerchief worn about the neck; a neckerchief; a neckcloth.

An examination of the sample, illustrative exhibit 1, shows that the involved merchandise consists of pieces of cloth shaped like a handkerchief, and the testimony of plaintiff's witness establishes that it is worn about the neck. It would appear, therefore, that the involved merchandise falls squarely within the definition of a "handkerchief," as defined by Webster, *supra*. We are not able to gather anything from an examination of the sample before us which would indicate that the involved square pieces of cloth are not suitable for wiping the face, nose, or eyes. In fact it is quite apparent from an examination of the sample that the merchandise is suitable for wiping the face, nose, and eyes. The evidence of the plaintiff is wholly insufficient to establish the chief use of the merchandise for any purpose other than that of being carried for wiping the face, nose, or eyes, or being worn about the neck.

In *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75, the Court of Customs and Patent Appeals, in holding that the collector is presumed to have found every fact to exist necessary to sustain his classification, employed the following language:

With respect to this latter contention, the testimony is that one of the principal uses of the material is for the manufacture of rayon, which is a textile material.

For the purposes of this case we must presume that such use is the principal use of the material passing through the machines. It is well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification. *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309. There is no evidence in the record overcoming the presumption that the chief use of the material was for the manufacture of rayon.

In *McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77, the Court of Customs and Patent Appeals held as follows:

The law is well settled that the classification by the collector and his official acts are presumptively correct. Therefore, the presumption is that the bowls in question are unusual containers. Appellant had the burden of overcoming this presumption by competent evidence. This it has failed to do.

For the foregoing reasons the judgment appealed from is *affirmed*.

In the instant case it must be presumed that the collector found every fact to exist that was necessary to sustain his classification. Therefore, the presumption is that the merchandise in question consists of small pieces of cloth, approximately 18 inches square, carried for wiping the face, nose, or eyes, or that it consists of a piece of cloth shaped like a handkerchief worn about the neck. Plaintiff had the burden of overcoming this presumption by competent evidence. This it has failed to do.

For the foregoing reasons all claims of the plaintiff are overruled. Judgment will be rendered accordingly.