United States *v.* The Specialty House, Inc.. Bryant & Heffernan, Inc., et al. (No. 4817)[1]

---

[1] C. A. D. 585.

United States Court of Customs and Patent Appeals, February 21, 1955

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon, Richard H. Welsh,* and *Richard M. Kozinn*, special attorneys, of counsel), for the United States.

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for appellees.

[Oral argument December 8, 1954, by Mr. Welsh and Mr. Donohue]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Second Division, C. D. 1596, which sustained the importers' claim that merchandise invoiced as silk habutae squares, of various solid colors, prints, and ombre shades, used as color and style accessories to complement the feminine costume, was classifiable under paragraph 1210 of the Tariff Act of 1930, as modified, *infra*, as silk wearing apparel, not specially provided for, dutiable at 35 per centum ad valorem.

The United States, as appellant, contends that the imported articles were correctly classified by the Collector of Customs at the port of entry under paragraph 1209 of said Act of 1930 as hemmed silk handkerchiefs, valued at not more than $5 per dozen,[1] dutiable at 60 per centum ad valorem.

The tariff provisions in question are as follows:

Par. 1209. Handkerchiefs and woven mufflers, wholly or in chief value of silk, finished or unfinished, not hemmed, 55 per centum ad valorem; hemmed or hemstitched, 60 per centum ad valorem.

Par. 1210, as modified by T. D. 51802, the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305.

---

[1] Paragraph 1209, as modified by T. D. 51802, provides for a lower duty assessment on hemmed silk handkerchiefs valued at more than $5 per dozen.

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of silk, and not specially provided for— 35% ad val.

The question presented, as stated by the Government in its brief, is whether the involved articles are handkerchiefs, wholly of silk within the purview of paragraph 1209, *supra*, as classified, or are wearing apparel manufactured wholly of silk, not specially provided for, under paragraph 1210, *supra*, as claimed by the importers.

At the trial, it was agreed between counsel for the respective parties that the imported articles were hemmed, valued at not more than $5 per dozen, and were wholly or in chief value of silk. It was further agreed that importers' Collective Exhibit 1, consisting of Exhibits 1 a, 1 b, and 1 c, was representative of the merchandise in controversy, Exhibit 1a being a solid colored, 17 inch square, 5 momme weight, habutae silk article (except that the involved articles do not have any drawn work in the corner), Exhibit 1b being a 17 inch, 4 momme, ombre silk article, and Exhibit 1c being a 17¼ inch, 4 momme, printed silk square. Importers also introduced numerous photographic exhibits in evidence illustrating the various uses of the imported articles as costume accessories worn by women and girls in the hair, about the neck and on the wrist, at the waistline, around the ankle and on slippers, and in other similar ways. Other exhibits on behalf of the importers showed use of the merchandise in the manufacture of various articles of women's wear such as, for example, one of the imported articles pleated and fastened to pearl beads to form a choker, and another pleated square cut in half, each half being attached to the end of a chain designed to be worn around the ankle.

At the outset of the trial, the court's attention was drawn to the case of *Geo. S. Bush & Co., Inc.* v. *United States*, 29 Cust. Ct. 395, Abstract 56928, wherein merchandise similar to that involved herein was claimed dutiable as silk wearing apparel under paragraph 1210, *supra*, but held properly classified by the collector as hemmed silk handkerchiefs under paragraph 1209, *supra*. In that case, the court quoted the definition of a "handkerchief" set forth in Webster's New International Dictionary, 1949, as follows:

Handkerchief. 1. A small piece of cloth usually square and often embroidered or laced, carried for wiping the face, nose, or eyes. 2. A piece of cloth shaped like a handkerchief worn about the neck; a neckerchief; a neckcloth.

In finding that the merchandise involved in the *Bush* case, *supra*, came within the common understanding of the term "handkerchief," the court there stated:

In the instant case it must be presumed that the collector found every fact to exist that was necessary to sustain his classification. Therefore, the presumption is that the merchandise in question consists of small pieces of cloth, approximately 18 inches square, carried for wiping the face, nose or eyes, or that it consists

of a piece of cloth shaped like a handkerchief worn about the neck. *Plaintiff had the burden of overcoming this presumption by competent evidence. This it has failed to do.* [Italics added.]

With respect to the court's ruling in the cited case, importers' counsel stated at the trial that it would be established by competent evidence that (1) the instant silk articles differed in use, characteristics, and name from handkerchiefs, as that term is above defined, and (2) that the definite, uniform, and general understanding of the term "handkerchiefs" in the wholesale trade and commerce of the United States on or prior to 1930 was limited to those articles used to wipe the face, nose, or eyes, and did not include, under either definition quoted in the *Bush* case, *supra*, the silk articles in question, and (3) that the imported articles are bought, sold, known and used as scarfs or squares, and not as handkerchiefs.

Eleven witnesses testified in support of the importers' position. The Government relied largely on the court's holding in the *Bush* case, *supra*, and sought to prove by the testimony of five witnesses appearing in its behalf that merchandise of similar habutae weave, and of the same size and weight as that represented by importers' Collective Exhibit 1 was in existence on or immediately prior to the enactment of the Tariff Act of 1930; that such merchandise was bought, sold, known, and used as handkerchiefs throughout the trade and commerce of the United States; and that there was no commercially differing meaning for the term "handkerchief" from that of its common signification as set forth in the *Bush* case, *supra*.

The trial court set forth its analysis of the testimony and exhibits at great length in its opinion, concluding as follows:

The weight of the evidence establishes that on and immediately prior to June 17, 1930, there was, as to the No. 2 definition quoted in the *Bush* case, *supra*, a difference between the common and commercial meaning of the term "handkerchief;" that such commercial meaning of the term "handkerchief" was definite, uniform and general throughout the trade and commerce of the United States; that such commercial meaning covered and included a small piece of cloth usually square, carried by a person for wiping the face, nose, and eyes, but did not cover and include a piece of cloth shaped like a handkerchief worn about the neck, a neckerchief, or neckcloth, whether such cloth was composed of cotton, linen, silk, or other material.

The weight of the evidence also establishes that the involved merchandise is used by women and girls in their hair, combined with pearls and other jewelry and worn around the neck, as color accents on different articles of wearing apparel, as a fichu around the collar of a suit and in lieu of a blouse, as a color accent at the waistline or the ankle or on a pair of slippers, and that such uses are the chief uses of the involved merchandise. Whether the involved merchandise is worn around the neck or otherwise, it was always worn by women and girls as an ornament, as a style accessory, and as a picker-up for other articles of wearing apparel. It is never carried or used for wiping the face, nose, or eyes.

The evidence further establishes that the involved merchandise is known and dealt in commercially as scarves or squares, and never as handkerchiefs; that

there is a trade discount of 8 per centum on scarves and squares and a trade discount of 3 per centum on handkerchiefs; and that the involved merchandise is uniformly granted the 8 per centum discount applicable to scarves and squares. When it is considered that W. T. Grant Co. has 500 retail stores, F. W. Woolworth Co. has 2,000 retail stores, and S. S. Kresge Co. has 360 retail stores throughout the United States, in addition to perhaps thousands of other stores throughout the United States, all of which are accorded the 8 per centum discount in purchasing the involved merchandise, much weight attaches to the fact that the involved merchandise is accorded the 8 per centum discount rather than the 3 per centum discount accorded in the sale of handkerchiefs. No argument is required to establish that if in the trade throughout the United States the involved merchandise were known and bought, and sold, and used, as handkerchiefs, it would be accorded only the 3 per centum discount and not the 8 per centum discount applicable to scarves or squares.

    \*       \*       \*       \*       \*       \*       \*

\* \* \* As heretofore stated, the involved merchandise is used by women and girls as articles of wearing apparel. Defendant's witnesses do not contradict this fact. Even if the involved merchandise were used as a handkerchief, it would still be an article of wearing apparel, *eo nomine* provided for as handkerchiefs. The fact that it is not *eo nomine* provided for does not destroy its proper classification as articles of wearing apparel, but simply relegates it to that class of articles of wearing apparel, not specially provided for.

Appellant contends that the court below erred in holding that a commercial designation of the term "silk handkerchiefs" had been established which excluded the involved articles from classification under paragraph 1209, *supra*. While we are of a contrary opinion, and think that each of the foregoing conclusions of the lower court was supported by the weight of the evidence, it is necessary for us to do no more in expressing our agreement therewith than inject this additional brief observation.

The involved silk articles have been imported in commercial quantities since 1945 or 1946. They are worn exclusively by women and girls, in solid colors, prints, and ombre shades, as style and color accessories contributing to the effectiveness of the feminine manner of dress. The articles are characteristically bright and colorful, and undisputed testimony on behalf of the importers indicates that proper stocking of such merchandise for sale requires 15 or 20 different colors and 12 or 15 different prints, each print being carried in several color combinations. The merchandise is presently bought and sold and known in the wholesale trade of the United States as an item of women's wearing apparel popularly and commercially designated as scarfs or squares.

There is no evidence in support of the Government's view that the involved merchandise was, on or prior to enactment of the Tariff Act of 1930, known, bought, sold, and used as handkerchiefs. The Government endeavored to prove only that similar or like merchandise existed and was so known, but the degree of similarity or likeness to the instant articles was not sufficiently developed.

During oral argument of the appeal, the various uses of the imported articles, as hereinbefore set forth, were demonstrated to us by large colored photographs (designed to be observed through the medium of a commercial type shadow box) showing attractive young lady models displaying the merchandise as actually intended for use. Each photograph speaks convincingly in itself in support of the importers' case, and is in confirmation of common knowledge as to the distinction in use between the involved silk products, as illustrated by the exhibits, and handkerchiefs of silk or any other material.

While the common and commerical meaning of tariff terms are presumed to coincide, and the burden of proof is upon the party asserting a commercial designation, importers herein have clearly established that in the trade a handkerchief is "a small piece of cloth usually square and often embroidered or laced, carried for wiping the face, nose, or eyes." That definition, as quoted in the *Bush* case, *supra*, is primarily expressed in terms of use. The imported articles are clearly not intended for use to wipe the face, nose, or eyes, and are henceforth not classifiable within the commercial designation as established by the weight of the evidence herein.

For the reasons hereinbefore stated, the judgment of the United States Custom Court is *affirmed*.

JOHNSON, J., dissents.