(C. D. 1619)

DONALDS LTD., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 3, 1954)

*Fred Bennett* (*John R. Rafter* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The description of the merchandise covered by this protest, and the nature of the assessments of duty made thereon by the collector of customs, are contained in the following stipulation of facts entered into by and between the parties herein as follows:

IT IS HEREBY STIPULATED AND AGREED as follows:

I. The merchandise covered by the above-enumerated protest is "vapex inhalers", each of which, as imported, consisted of two parts, namely:

(1) A hollow cylindrical holder, made of urea formaldehyde resin, about 2¼ inches in length and about 9/16 of one inch in diameter, one end of which has a dome-like shape and is closed except for a small orifice at its apex and is covered by a readily removable cap of a similar shape, and the other end of which is open but is covered by a readily removable screw cap with a

thin spot which may be easily perforated as an air hole in the bottom of the inhaler;

(2) A cylindrical pad of cotton, impregnated with vapex inhalant, of a size and shape which loosely fits the interior of said holder.

II. A sample of such vapex inhalers is submitted with this stipulation and may be received in evidence as Exhibit 1. It is representative of all such inhalers, except that the inhalant with which the cotton pad therein was impregnated at the time of its importation has now evaporated.

III. As imported, each such inhaler was enclosed in a cardboard box, together with a printed circular of directions for using the vapex inhaler and for using vapex inhalant in a handy-size bottle; and twelve such boxes containing twelve such inhalers were enclosed in a cardboard carton; and fifty such cartons, each containing twelve such boxes of inhalers, were enclosed in a wooden packing case.

IV. Representative samples of such cardboard boxes, printed circulars and cardboard cartons are submitted with this stipulation and may be received in evidence as Exhibits 2, 3 and 4, respectively.

V. Said vapex inhalers were purchased by the plaintiff in English currency at 49 shillings and 6 pence per gross, including the cost of said cardboard boxes, printed circulars and cardboard cartons, plus 4 shillings per each said wooden packing case. They were entered and appraised in English currency at 117 shillings per gross, including the cost of said cardboard boxes, printed circulars and cardboard cartons, plus 4 shillings per each said wooden packing case.

VI. Each said vapex inhaler was assessed with duty at the rate of 25 per cent ad valorem under paragraph 5 of the Tariff Act of 1930 as a non-alcoholic medicinal preparation and the part thereof which is described as the holder in paragraph I, (1), of this stipulation was assessed with additional duties at the rate of 35 cents per pound and 30 per cent ad valorem under paragraph 1539 (b) of said Act, as modified by foreign trade agreement (T. D. 51802).

VII. Said holders were appraised in English currency at 21 shillings per gross and were found by the appraiser to weigh approximately 1.90 pounds per gross.

VIII. If said holders are subject to additional duties by virtue of Section 504 of the Tariff Act of 1930, the additional duties which were assessed thereon are admittedly correct.

IX. Said vapex inhalers are intended to clear the nasal passages of human beings and, thus, to afford relief in cases of common colds. Before using any of said inhalers the thin spot in the screw cap at the bottom of the inhaler must be perforated as an air hole, so as to permit inhalation of its vapex inhalant. Each inhaler is then used by removing the cap from its dome-shaped end and inserting said end into each nostril and inhaling through each nostril.

X. When the vapex inhalant in each said inhaler has been used up by such inhalation or has otherwise evaporated, the inhaler may be reused as often as desired by removing its screw cap and impregnating its cotton pad with a new quantity of vapex inhalant.

XI. The medicinal property of said inhalers is a volatile liquid inhalant known as "vapex" which, in addition to being imported and sold as a part of said inhalers, is also imported and sold both at wholesale and at retail in glass bottles, in which case it is used or may be used by putting a few drops of said inhalant on a handkerchief or a pillow and by inhaling it in that form, rather than as a part of said inhalers.

XII. The above-enumerated protest is hereby limited to said vapex inhalers and said holders and is abandoned as to all other merchandise; and said protest is hereby submitted for decision on the official papers relating to such protest and on this stipulation.

The protest claims are that the so-called "holders" are not subject to the additional duties imposed by virtue of section 504 of the Tariff Act of 1930 on the ground that they are not unusual materials, articles, or forms, within the meaning of the said section, and that the inhalers, including the holders and their contents, are properly dutiable at the rate of only 25 per centum ad valorem under the provision in paragraph 5 of the said act for "medicinal preparations * * * not specially provided for."

Section 504 of the Tariff Act of 1930, under the heading "Coverings and containers," reads as follows:

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

It is the plaintiff's contention that the inhalers here involved, meaning by the term "inhaler" the holder and the cylindrical cotton pad impregnated with the inhalant, are entireties, that is to say, a single tariff entity, classifiable as medicinal preparations under paragraph 5, *supra*. It is argued that if the inhalers are entireties, then the holder is not a container, at least in a tariff sense, for *imported merchandise* within the meaning of that term, as used in section 504, *supra*, inasmuch as the holder is itself a composite part of the imported merchandise. In other words, an article cannot be at the same time both the merchandise which is being imported and the container for the merchandise which is being imported.

It seems clear that the assessment of the ordinary or regular duties under paragraph 5 of the Tariff Act of 1930 in this case, as distinguished from the assessment of additional duties under the special provisions of section 504, was not made by the collector on the basis that the inhaler (i. e., the holder, cotton, and inhalant) was a single tariff entity, to wit, a medicinal preparation. Paragraph 5 imposes ad valorem duties upon the merchandise covered thereby. Section 402 sets forth the basis for the assessment of ad valorem duties and provides that the value of imported merchandise shall include the cost of "all containers or coverings of whatever nature" (thereby including in the value the cost of containers, whether usual or unusual). Consequently, the ordinary or regular ad valorem duties assessed on the importation were so assessed upon the basis of values which included the cost of the holders.

As the protest of the plaintiff is directed against the assessment of the additional, as distinguished from the regular duties, the question raised by the plaintiff still remains, i. e., whether the inhalers are entireties for tariff purposes. If this question were determined in the affirmative, the result in connection with the assessment of ordinary or regular duties would not be affected, but the assessment of additional duties upon unusual containers would be affected in that a determination that the inhalers are entireties would characterize the holders as imported merchandise and not as containers of imported merchandise. The basic question to be determined, therefore, is whether the inhalers are entireties.

The doctrine of entireties in customs jurisprudence is a rule of classification and rests upon the proposition that the classification of imported articles for duty purposes is determined by their condition at the time of importation. *United States* v. *Schoverling, Daly & Gales*, 146 U. S. 76, 36 Law. ed. 893. The duties and exemptions from duty prescribed in the dutiable and free lists of the tariff act in connection with "articles * * * imported" [1] are so prescribed with respect to the actual, commercial nature of the articles involved, the tariff act being written in the language of commerce.

In *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232, after reviewing many of the decided cases on the subject, the late Presiding Judge Graham, speaking for the court, said:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

The rule, therefore, requires that in determining the proper classification applicable to imported articles, the actual nature of the article of commerce, or commercial entity, involved must be taken as the determinant.

In the application of the doctrine, the two possible situations which may arise are (1) where physically separate entities are imported in one importation, and the question is whether or not they may be considered as a single commercial unit and classified under a tariff provision applicable to the unit, or (2) where a unit is imported, and the question is whether or not the parts thereof, rather than the unit, may each be individually classified under tariff provisions applicable to the parts.

At the risk of possible oversimplification of a doctrine, which by reason of complex fact situations has necessarily given rise to numer-

[1] Title I, section 1, and Title II, section 201, Tariff Act of 1930.

ous fine legal distinctions, the gist of the decided cases, at least insofar as they are applicable to the situation before us, seems to be as follows: If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

As is the case with every rule of classification, where long-continued administrative practice, established judicial construction, or manifest contrary legislative intent can be shown, the rule must yield. None of these appears to be involved here.

Applying what has been said to the situation before us, it is quite obvious from a reading of the stipulation and an examination of exhibit 1 that what we have involved in this case is a single commercial unit, viz, an inhaler, consisting of three parts (holder, cotton core, and inhalant), imported in a completely assembled condition. We think it is clear that the individual identities of the holder, cotton core, and inhalant, while still existing and recognizable as such, have been subordinated in the creation of a combined entity which is a complete article of commerce bearing a name, inhaler, different from the names of its parts.

The importation is something more than an inhalant enclosed in a container; it is a combination article particularly appropriate for applying as well as transporting the inhalant. The situation is somewhat like that which obtained in the case of *United States* v. *Mathews*, 78 Fed. Rep. 345, involving needle cases containing needles. In affirming the decision of this court holding the imported articles to be dutiable as entireties, the Circuit Court of Appeals said, in part:

We concur in the finding of facts by the Board, and think that while the cases cover needles, and while the articles are extensively imported, the books are more than coverings, and are not designed to be used in the ordinary transportation of needles. They are ornamental articles, designed to be sold and used as such, and are properly described as furnished needle cases. A description of them as coverings for needles conveys an inadequate idea of the merchandise.

Similarly here, a description of the holders as containers for the inhalant conveys an inadequate idea of the merchandise.

We, therefore, conclude that the inhalers at bar are properly classifiable as entireties. As this necessarily characterizes the holders as imported merchandise, they are not materials, articles, or forms used for covering or holding imported merchandise and, con-

sequently, are not subject to the assessment of additional duties under section 504.

Although the facts of the case are not analogous to those in the case at bar, the distinction between containers imported as coverings and those imported as merchandise is brought out in the case of *United States* v. *Yamamoto & Co.*, 10 Ct. Cust. Appls. 70, T. D. 38338, *q. v.*

There does not seem to be any serious dispute but that the entirety should take classification under the provision for nonalcoholic medicinal preparations in paragraph 5. There is no *eo nomine* provision in the tariff act for inhalers. The provision in paragraph 5 is a designation by use and takes precedence over provisions which would embrace the merchandise by composition or general description in the absence of indicated legislative intent to the contrary.

The entirety is used as a medicinal preparation, according to the stipulated facts, and there does not seem to be any manifest legislative intent that such articles should take classification elsewhere, save possibly in paragraph 23, providing, among other things, for medicinal substances, when imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms. Whether the holder here involved is a similar form to those named is unnecessary here to determine, as the same rate of duty is applicable to the merchandise under paragraph 23 as is applicable under paragraph 5.

Judgment will, therefore, issue sustaining the protest claim accordingly.