(C.D. 2400)

Marset, Inc.
W. J. Byrnes & Co. of N.Y., Inc. } *v.* United States

United States Customs Court, First Division

(Decided May 23, 1963)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Mollie Strum* and *James F. O'Hara*, trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: This case presents a question involving the doctrine of entireties, i.e., whether two articles, each physically separate from the other but imported at one time, are to be considered as a single entity for tariff classification purposes. The ultimate consignee in the case at bar imported, in one shipment, 600 cardboard containers each labeled "Gold Ink." Inside of each container were two cans, each weighing 1 pound, one can labeled "Gold Ink Paste" and the other labeled "Gold Ink Varnish."

The collector of customs treated the imported merchandise as two separate tariff entities and assessed duty on the "Gold Ink Paste" at the rate of 11 per centum ad valorem under the provision in paragraph 66, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, for pigments, not specially provided for, and on the "Gold Ink Varnish," at 10 per centum ad valorem under the provision for varnishes, not specially provided for, in paragraph 75 of the said act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.

By protest and amendment thereof, plaintiffs claim that the imported merchandise should be classified as an entirety under the provision for ink, not specially provided for, in paragraph 43 of the said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, with duty assessment at 5 per centum ad valorem.

Samples of the imported merchandise are before us as follows: Plaintiffs' exhibit 1 is a 1-pound can of the "Gold Ink Paste"; plaintiffs' exhibit 2 is a 1-pound can of the "Gold Ink Varnish"; and plaintiffs' exhibit 3 is the cardboard container in which exhibits 1 and 2 were imported.

The record, which is very full and complete, establishes without question that the "Gold Ink Paste" and the "Gold Ink Varnish" here involved were specially formulated and designed to be used by uniting them so as to produce a gold-colored printing ink, known as a gold metallic printing ink.

There is no gold contained in the merchandise, but, to produce the shade desired, i.e., light, medium, or deep, the paste contains flakes or powders of bronze, or copper and zinc, in varying proportions, suspended in hydrocarbon mineral spirits. The metallic portion of the paste, upon exposure to the atmosphere, is subject to oxidation, which has the effect of changing its color and luster. In order to produce a stable metallic printing ink, the metal must be mixed with a vehicle called a "varnish" immediately prior to use, since the vehicle itself has an oxidizing effect upon the metal until it has dried. Once mixed and used in printing, the vehicle not only binds the gold color to the paper, but furnishes a cover to prevent the atmosphere from oxidizing the metallic portion of the ink.

The record establishes that the "Gold Ink Paste" here involved has no practical or commercial use, except to be mixed with the imported "Gold Ink Varnish" to form gold metallic printing ink, and, similarly, that the "Gold Ink Varnish" has no practical or commercial use, except to be mixed with the "Gold Ink Paste" for the same purpose.

Plaintiffs contend that the paste at bar does not respond to the common meaning of the term "pigments," as used in the tariff act, and that the varnish at bar does not respond to the common meaning of the term "varnishes," as used therein, inasmuch as neither can be used alone as a pigment or a varnish. Further, plaintiffs maintain that, by reason of the dedication of the paste and varnish to the sole use of making a metallic printing ink, the importation should have been classified as an entirety as ink. On the other hand, the defendant argues that, standing alone, dedication of both items to a sole use is not sufficient to confer upon the simultaneously imported articles the tariff status of entireties; that, in their condition, as imported, neither the paste nor the varnish was an ink, but that they were merely materials with the use of which ink might be made by procedures properly characterized as manufacturing operations, rather than as a uniting by joining or assembling.

We are of the opinion that, under the applicable authorities, the imported paste and varnish involved in this case are properly classifiable as an entirety as an ink provided for in paragraph 43, as claimed by the plaintiffs.

In *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232, a leading case on the subject of entireties, our appellate court said (p. 318):

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though

they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

In accordance with the foregoing principles, in a recent case, this court said:

* * * if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

As is the case with every rule of classification, where long-continued administrative practice, established judicial construction, or manifest contrary legislative intent can be shown, the rule must yield. None of these appears to be involved here. [*Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, at p. 315.]

We think that the application of the foregoing rule to the facts in the case at bar must result in the conclusion that the imported paste and varnish constitute an entirety, namely, an ink, for tariff classification purposes.

The record establishes that metallic printing inks which contain a metal which oxidizes upon exposure to the atmosphere cannot be made or imported ready for use in printing presses, but that the ingredients, which are usually called, correctly or not, a pigment and a varnish, must be mixed immediately prior to use. If not used within a comparatively short time, the mixture, i.e., the ink, must be discarded. The record also establishes that usually the pigment and the varnish are mixed together in equal amounts by weight, so that there is sufficient of each of the ingredients or parts of the ink in each imported container at bar to make 2 pounds of ink. There may be varying situations, involving the absorption rate of the ink in connection with a particular paper or surface, or the atmospheric conditions of the pressroom or of the mixed ink, which might call for some slight change in the proportion of paste to varnish, but, generally speaking, the paste and varnish are used in equal amounts.

The doctrine of entireties presupposes that if the parts involved were imported separately, they would find classification in some enumeration of the tariff act, or under the nonenumerated articles provision, so that the fact that the present act provides for both "pigments" and "varnishes" does not require that the imported paste and varnish be classified thereunder, unless there be some manifestation of legislative intent, or long-continued administrative practice, or established judicial construction indicating that the doctrine of entireties cannot be applied to the tariff provision under which claim is made, or which requires classification under one of the provisions applicable to the imported parts. No such intention, practice, or decision appears here, and none has been called to our attention.

Consequently, we do not consider it material to a disposition of the issue that, as claimed by plaintiffs, the imported articles are not technically pigments or varnishes, or, as pointed out by the defendant, pigments and varnishes are provided for *eo nomine* in the tariff act.

The issue on which the case turns, as we see, it, is whether the act of uniting the imported parts or ingredients is a mere joining, attaching, or assembly operation, or whether, as claimed by the defendant, it amounts to a manufacturing operation. As indicated by the decisions in the *Altman* and *Donalds* cases, *supra*, the doctrine of entireties regards the actual nature of the importation. It considers that when individual, simultaneously imported parts are obviously to be used together without joining, or are in a knocked-down or unassembled condition, and, in order to be used together, need only the type of labor or skill to unite them which may be characterized as a mere joining, attaching, or assembly operation, the imported articles will be regarded, for classification purposes, as the single tariff entity they represent. On the other hand, if the labor or skill which must be expended in uniting the parts for use is of the nature of manufacturing effort, i.e., that the parts are only materials which must be worked before they are in condition to be united, so that the operation may be more properly characterized as a manufacturing than a uniting process, it follows that the parts must be treated as individual tariff entities.

It would be virtually impossible to lay down with preciseness the line of demarcation between the two situations, but we think the facts in the present case clearly place it in the category of that first described. Reference to two decided cases treating the matter will, perhaps, make this more apparent.

In *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T.D. 43266, the imported merchandise consisted of pieces of cotton canvas stamped with designs in various colors, and silk yarn or wool yarn in corresponding colors, intended to be embroidered over the designs. Each bundle of yarn was imported with the particular canvas on which it was to be used. The canvas and yarn were assessed with duty as entireties as manufactures in chief value of silk or of wool, according to the value of the predominant material in each case. They were claimed to be separately dutiable, the canvas as manufactures of cotton and the yarns under the applicable provisions therefor.

In determining that the canvas and the yarn imported therewith were not entireties, our appellate court observed (p. 551) :

The pieces of cotton canvas and the yarn—silk in some instances and in other, wool—are not "parts" capable of being attached or put together by mere assembly. On the contrary, they are mere materials and are intended to be used as such in a process of manufacture, requiring either hand work

or machine work to complete the article. It may be that one of the materials—the canvas—has been so far manufactured as to be dedicated to the making of a class of articles, but this is not true of the yarn. While it is a completely manufactured article, it is, nevertheless, material for use in the manufacture of a variety of articles.

In *United States* v. *Kronfeld, Saunders, Inc.*, 20 CCPA 57, T.D. 45679, the importation consisted of a platinum bracelet mounting, containing 234 holes for the insertion of 234 diamonds, which were imported therewith and intended for that particular mounting. The merchandise was classified as an entirety as jewelry and claimed to be separately dutiable, the mounting as jewelry and the diamonds under the *eo nomine* provision therefor.

After reviewing various decisions on the subject of entireties, among them the decision in the *Wanamaker* case, *supra*, our appellate court said (p. 60):

The foregoing authorities clearly establish that when two or more parts of an article are shipped together and are intended to be used together as one article, and by mere assembly they are made into one article, they shall be regarded as entireties for tariff purposes. The record in this case shows by a fair inference that the bracelet mounting was suitable for use as such only when fitted with 234 diamonds. The fitting of the stones, as far as this record shows, involved only the attachment of the same to the mounting. That the assembly required skill and some labor is unimportant. The assembly of some large machines that come into this country requires great skill and much labor, and yet it would be idle to contend that the whole of the assembled parts did not constitute an entirety. This case is not on all fours with the *Wanamaker* case, *supra*, where the yarns and canvas clearly constituted nothing more than mere material with which a figure was to be embroidered. There more than assembly was required to form the article. There independent work was required other than that required for putting two finished parts together.

As to just how much labor may be expended in fitting the article for the assembly without destroying the quality of the combination as an entirety is not before us on this record.

The record shows that the operation of uniting the paste and varnish in this case to produce gold metallic printing ink consists of mixing appropriate quantities of the paste and varnish on a slab with the use of a knife, or placing the paste and varnish in a bowl or can and mixing the same with any sort of electrical or mechanical mixer. The resultant ink, which is in a viscous state, is put into the fountain of the printing press and used immediately.

This process is relatively simple, and we believe it is most properly described as a joining or assembly operation rather than as a manufacturing operation. Certainly, it does not seem to require any more skill or labor than that involved in the joining of the diamonds and mounting to form the jewelry in the *Kronfeld, Saunders, Inc.*, case, *supra*, and, in the expenditure of labor and skill, does not approach the embroidering operation referred to in the *Wanamaker* case, *supra*.

For the foregoing reasons, we are of opinion that the merchandise here involved and described as "Gold Ink Paste" and "Gold Ink Varnish" are, for tariff purposes, entireties. Accordingly, we hold the involved merchandise properly dutiable under paragraph 43 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 5 per centum ad valorem under the provision therein for ink, not specially provided for, as claimed.

The protest is sustained. Judgment will issue accordingly.