(C.D. 2429)

## Miniature Fashions, Inc. *v.* United States

United States Customs Court, Second Division

(Decided January 28, 1964)

*Siegel, Mandell & Davidson* (*David Serko* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* and *James F. O'Hara,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: The question raised by the instant protest is whether or not certain so-called cabana sets, consisting of children's apparel in the form of shorts and design-matched uppers, constitute entireties for customs purposes. The collector of customs at the port of New York has taken the position that these two-part sets are not entireties and, accordingly, assessed duty thereon as follows: The uppers within the provision for shirts in paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, at the rate of 25 per centum ad valorem; the shorts or pants as other articles of wearing apparel in said paragraph 919, as so modified, at the rate of 20 per centum ad valorem.

It is the contention of the plaintiff that said sets are not separably dutiable as shirts and other articles of wearing apparel, but, in fact, and in contemplation of law, consist of units which are dutiable, as entireties, at the rate of 20 per centum ad valorem, as other articles of wearing apparel, in said paragraph 919, as modified, *supra.* In effect, therefore, the protest is directed against the classification of the upper portion of these outfits as shirts.

The text of paragraph 919 of the Tariff Act of 1930, as modified by

said General Agreement on Tariffs and Trade, insofar as here applicable, reads as follows:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ 20% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Shirts of cotton, not knit or crocheted_____ 25% ad val.

A sample of the importation is in evidence as plaintiff's collective exhibit 1, subdivided into exhibit 1–A, the upper portion of the outfit; 1–B, the pants portion. A similar cabana set, designed for a firm by the name of Exclusively Yours, Ltd., is in evidence as plaintiff's collective illustrative exhibit 2, separated into components identified as exhibit 2–A, the upper; exhibit 2–B, the pants.

Three witnesses were called to testify on behalf of the plaintiff, at the trial of this case, two being affiliated with the importer; the third, a member of the firm which produced said illustrative exhibit 2. No evidence was offered by the defendant.

At the outset of the trial, counsel for plaintiff advised the court that his proof would be presented in support of two propositions, namely and principally, that the articles at bar are commercial entireties, and, secondly, that the upper portion is not a shirt, as that term is used in the tariff act or in the trade and commerce of this country. While, indeed, some of the testimony thereafter elicited from the witnesses related to the question of whether or not plaintiff's exhibit 1–A might properly be termed a shirt, and the substance of the witnesses' statements on this subject were reviewed in the briefs of respective counsel, it does not appear that plaintiff actually relies upon this issue, since the matter is not pressed in either of the two briefs submitted on behalf of plaintiff. Accordingly, it is our intention to assume that the question of whether or not plaintiff's exhibit 1–A is a shirt is no longer in contention.

In substance, the testimony given by the witnesses for the plaintiff, who have all had experience in the production and sale of merchandise such as is here involved, tends to establish on the primary issue that the subject cabana sets were styled in this country, but manufactured in Japan. The items were designed as a unit, matched as to color, print, and fabric; imported as a unit, pinned together; invoiced as a unit; and invariably sold as a unit, both at wholesale and by retail establishments. They are inexpensive articles of children's apparel, which have very little, if any, value when separated. They do not even warrant the expense of removing the pins which attach the two pieces together, and should one of the parts be damaged, the entire set would ordinarily be returned for credit or replacement.

As stated by witness Leon Swergold, one of the original owners of plaintiff company:

* * * When we get one of them back, it is impossible to replace them because you cannot match to make a set out of it, so generally we put it in the waste basket or we give it away to a charity. It cannot be sold separately.

Although the evidence preponderates that these outfits were co-ordinated to be sold and worn as single units, there is, nevertheless, testimony to the effect that, in the last analysis, the taste of the wearer must ultimately dictate whether the parts are always worn as a unit or are, in fact, interchanged with other shirts or shorts, as the case may be.

From the foregoing uncontroverted facts, it must be determined whether the present importation is to be regarded as composed of two-part units constituting single entities for customs purposes, or as consisting of separate articles, individually dutiable. That is to say, we are here required to consider whether or not the subject cabana sets are entireties for purposes of classification within the tariff laws of the United States.

While the question of what constitutes an entirety has given rise to much perplexing litigation over the course of the years, the principle to be applied in such cases has not lacked artful expression. It was said, in *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232:

* * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

Involved in the *Altman* case was an importation, in separate pack-ages, of untrimmed corsets and lace trimmings, the latter so labeled as to indicate the particular corset to which it was to be attached. In reaching the conclusion that the corsets and trimmings were entireties, within the rule above quoted, the court appears to have been impressed with the fact that the corsets in issue did not become finished and complete articles of commerce until the trimmings were added. This is evident from the court's consideration of prior authorities concerned primarily with what may be characterized as articles imported in a knocked-down condition as exemplified, in particular, by the gun barrels and gun stocks, the subject of decision in *United States* v. *Schoverling*, 146 U.S. 76. It is also implicit in the very phrasing of the quoted text.

Apparently not regarded as pertinent to the issue under considera-tion were several earlier decisions of the same court involving ship-

ments of two or more complete articles, imported and designed to be used together, as, for example, steam engines and fans for supplying forced drafts for the boilers of vessels, which were held not to be entireties in *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085; and boots, fitted with loops, through which accompanying leather straps were to be threaded, for tightening at the knees of the wearer, which were held to be separate articles in *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680, for the reason that the individual identities of boot and strap were not lost by their combination.

From these two lines of decisions, however, the doctrine of entireties may be said to have developed. A concise explanation of the principle may be found in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, where, in holding that certain inhalers, consisting of a cylindrical holder, a cotton core, and an inhalant, were entireties, this court stated:

* * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

Counsel for plaintiff, in their reply brief, suggest that the problem of entireties is essentially one of function; that when, in assembly, the parts are both necessary for the operation of the whole, and in conjunction therewith perform a function different from that which they individually serve, a new entity, dutiable as an entirety, has been created.

This is, to our way of thinking, simply a restatement of the general proposition that if the identity of the components is submerged into that of a newly created entity, an entirety exists. It offers no absolute solution to the complex problem of entireties.

The difficulty which is experienced in this type of case is not so much the formulation of a workable rule as it is the application of the provisions thereof to a given factual situation. Where it is apparent that the components of an importation have no useful function until joined into a single entity, it is, of course, relatively easy to say that the result constitutes an entirety. Where, however, the several components of a unit are to any extent alone susceptible of a separate use, the question of whether their individual identities are subordinated to the newly created entity is not so readily answered.

We seriously doubt, however, that the contention of subordination has been successfully established in the instant case. The articles which are claimed to represent an entirety are a shirt and a pair of shorts, color-, pattern-, and fabric-matched to form an article of commerce generally distributed in the markets of this country as a cabana set. When in use, however, and notwithstanding that they are designed to present an attractive appearance as a coordinated beach outfit, the functions of the separate parts are no different from what they would otherwise be if not so attractively combined. The shirt remains a shirt, the shorts remain shorts. And, of course, as reluctantly conceded by two of the witnesses for the plaintiff, only the taste of the wearer can ultimately determine whether or not the two parts will be worn as a set.

The most that can be said of the two articles of clothing here involved is that they were intended to be worn together, but, in fact, neither is intrinsically essential to the use of the other; neither depends upon the other for its substantive utility. The shirt is a complete article of wearing apparel whether or not it is worn with the shorts. The shorts are complete articles of wearing apparel whether or not worn with this shirt, some other shirt, or, indeed, no shirt at all.

There is relatively little to distinguish this case from *United States* v. *Schoen & Co., Inc.*, 20 CCPA 370, T.D. 46133, wherein certain embroidered blouses and silk skirts, matched in color, were held not to be dutiable as entireties. The following observations of our appellate court, in that case, seemingly are dispositive of the issue before us:

* * * there is nothing in the record to show that the said blouses and skirts were designed to form, when joined or attached together, a complete article of commerce, or that the importer intended so to use them, but on the contrary the testimony affirmatively shows that the said skirts and blouses were not designed to form a complete article of commerce, nor were they used as such by the importer.

\*     \*     \*     \*     \*     \*     \*

Judge Tilson, writing the opinion for the court below, correctly stated that—

Even though the skirts and blouses in this case, when desired, were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity, and when worn together, or attached, each performs its separate function without loss of any of its essential characteristics. The skirt remains a skirt, and the blouse remains a blouse. When separated the skirt remains useful as a skirt. It retains its commercial entity and remains complete in itself, a skirt. Likewise, the blouse retains its essential character and commercial entity, and remains complete in itself, a blouse.

We do not think that the circumstance that the instant articles are always sold together under the designation of cabana sets constitutes a substantial distinguishing factor warranting any other conclusion than that reached in *United States* v. *Schoen & Co., Inc.*, *supra*.

Based upon the foregoing considerations, we find the contention that the instant importation consists of articles dutiable as entireties to be without merit. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.