(C.D. 2568)

MINIATURE FASHIONS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [C.D. 2429] September 7, 1965)

*Siegel, Mandell & Davidson* (*David Serko* and *Richard H. Abbey* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Alfred A. Taylor, Jr., James F. O'Hara,* and *Sheila N. Ziff,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The instant protest is before us for the second time, rehearing having been granted to hear additional testimony and receive new evidence. The issue presented here, as at the prior hearing of this case, is whether certain design-, fabric-, and pattern-matched two-piece shirt-short sets, invoiced as "cabana sets" and designed, manufactured, intended for sale together, and, in fact, sold together as sets, constitute entireties for tariff purposes. The collector of customs at the port of New York has taken the position that these two-part sets are not entireties, but rather are separate entities. Accordingly, he has assessed them with duty pursuant to paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, the relevant portions of which read as follows:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |
| Other_____ 20% ad val. | | | | | | |
| * | * | * | * | * | * | * |

Shirts of cotton, not knit or crocheted_____ 25% ad val.

It is plaintiff's contention herein that these sets are more properly classifiable as entireties at the rate of 20 per centum ad valorem, as other articles of wearing apparel, within the purview of said paragraph 919, as modified, *supra*. Therefore, as is evident from the facts and as was noted in our prior decision in this case, *Miniature Fashions, Inc.* v. *United States*, 52 Cust. Ct. 26, C.D. 2429, this protest is essentially directed against the classification of the upper portion of these outfits as "shirts."

In the prior hearing of this case, plaintiff introduced two exhibits into evidence, both consisting of cabana sets similar to those in question. Plaintiff also produced three witnesses whose testimony was summarized in the previous decision as follows:

In substance, the testimony given by the witnesses for the plaintiff, who have all had experience in the production and sale of merchandise such as is here involved, tends to establish on the primary issue that the subject cabana sets were styled in this country, but manufactured in Japan. The items were designed as a unit, matched as to color, print, and fabric; imported as a unit, pinned together; invoiced as a unit; and invariably sold as a unit, both at wholesale and by retail establishments. They are inexpensive articles of children's apparel, which have very little, if any, value when separated. They do not even warrant the expense of removing the pins which attach the two pieces together, and should one of the parts be damaged, the entire set would ordinarily be returned for credit or replacement.

As stated by witness Leon Swergold, one of the original owners of plaintiff company:

> * * * When we get one of them back, it is impossible to replace them because you cannot match to make a set out of it, so generally we put it in the waste basket or we give it away to a charity. It cannot be sold separately.

Although the evidence preponderates that these outfits were coordinated to be sold and worn as single units, there is, nevertheless, testimony to the effect that, in the last analysis, the taste of the wearer must ultimately dictate whether the parts are always worn as a unit or are, in fact, interchanged with other shirts or shorts, as the case may be.

On the basis of the evidence adduced at the first hearing, this court upheld the collector's classification of these garments as separate entities, placing especial emphasis upon the fact that, although these cabana sets were designed, manufactured, intended for sale together, and, in fact, sold together as units, the functions of the several parts of the set were no different from what they would otherwise have been had the sets not been so coordinated. In other words, it was our opinion that, notwithstanding the foregoing considerations, the shirt continued to be a shirt and the shorts remained shorts.

In this rehearing, plaintiff has urged us to overturn our prior ruling on the basis of the new evidence which it has presented. This evidence consists of the testimony of two additional witnesses, together with six new exhibits.

Plaintiff's first witness on rehearing was Miss Joyce Williams who was employed as a designer for Joseph Resnick & Co., a firm specializing in the manufacture of cabana sets and shirts. Miss Williams stated that she had designed the garments represented by plaintiff's exhibits 3–5, which were cabana sets similar in all material respects to the merchandise in question, and that these garments were bought and sold in the trade as "cabana sets." With reference to these cabana sets, Miss Williams said that, in the design of these garments, it was her intent and purpose "To create a set, a two piece garment" and "To coordinate the two parts together, [to be] worn together and only together." On direct examination, she stated that this was achieved primarily by employing the same material as the shorts as the basis of the collar trim and that the merchandise in question was designed from the same point of view.

This witness also testified as to those characteristics which, in her opinion, distinguish a shirt from a cabana set top and stated generally that a shirt is complete in and of itself whereas a cabana set is composed of two parts, one not complete without the other. As to the specific differences between the two, Miss Williams mentioned several, to wit, that a shirt has a double yoke while a cabana top has a solid yoke in the back; that a shirt generally has a lined collar with either

collar stays or collar buttons, but the cabana top has neither lined collar nor top stitch; that a shirt generally is a more fully cut garment; that the shirt has a neck button while cabana tops almost always are open at the neck; and that all shirts must conform to certain Government specifications which guide designers. However, from the cross-examination of this witness, it becomes apparent that the witness was merely testifying to features present or missing in the particular garments which are in evidence herein and in others produced by the firm with which she was affiliated. She was constrained to admit, however, that it is entirely possible, for instance, for an inexpensive shirt to be constructed without a yoke or for some of the more expensive cabana tops to be made with lined collars and collar stays.

In short, we find this testimony lacking in conviction that these features, which are alleged to distinguish a shirt from a cabana set, are peculiarly characteristic of one type of garment rather than the other. As a matter of fact, it seems more likely that the presence of one or more of these special features is more directly related to the quality, cost, and price of the garment than to any real or apparent shirt/cabana-top distinction.

The gist of plaintiff's argument on rehearing is manifested by the remaining testimony of Miss Williams and plaintiff's other witness, Mrs. Dorothy Stote, a freelance writer who has had considerable experience in the children's wear field. In the main, these two witnesses testified to the ever-increasing impact that fashion and design have had on the children's wear industry since the end of the Second World War. It was mentioned that, since the mid-1940's, people, in general, have become increasingly style conscious and interested in eye-appealing apparel for men, women, and children alike. On the direct examination of Mrs. Stote, it was further brought out that, because of this recent trend toward recognizing fashion, garments like those in issue perform a dual function in the child's wardrobe—first and foremost, to clothe the child and, second, to do this in an eye-pleasing manner.

To support its claim that the court should recognize this trend and hold the merchandise in question dutiable as entireties, plaintiff has referred the court to several past decisions of this and our appellate court which, plaintiff contends, show a tendency toward recognizing fashion, fad use, and art as determinative factors in customs litigation. Cited in this connection are the cases of *C. Brancusi* v. *United States*, 54 Treas. Dec. 428, T.D. 43063; *United States* v. *The Baltimore & Ohio R.R. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719; *United States* v. *The Specialty House, Inc., Bryant & Heffernan, Inc., et al.*, 42 CCPA 136, C.A.D. 585; and *Geo. S. Bush & Co., Inc.* v. *United States*, 29 Cust. Ct. 395, Abstract 56928. It is urged that, in view of the emphasis on style trends in the cited

cases, new developments in fashion may serve to create new and different tariff classifications and to modify existing notions of what things are.

While it is true that a changing popular attitude played a role in the conclusions reached in the cited cases, we do not believe that these decisions actually rested upon this factor. In each instance, the real issue was much narrower than the broad general proposition that new views dictate new classifications. Moreover, in none was the question of entireties under consideration.

In the *Brancusi* case, *supra*, an original bronze bird, "Bird in Flight," was classified as an article of metal within the provisions of paragraph 399 of the Tariff Act of 1922. It was therein contended that the article in question was more properly classifiable in paragraph 1704 of said act as an original sculpture, a work of art, rather than an article of utility, and, therefore, entitled to free entry. In upholding the plaintiff's claim, the court did recognize the influence of new schools of thought in modern art for its understanding of what constitutes art. Nevertheless, its conclusion that the "Bird in Flight" was an artistic creation was derived from purely objective criteria as to its artistic merit. What is art for one generation may not be for another. However, although tariff provisions speak for the future and are designed to embrace new articles coming within their scope (*United States* v. *L. A. Salomon & Bro.*, 22 CCPA 490, T.D. 47483; *R. J. Saunders & Co., Inc.* v. *United States*, 49 CCPA 87, C.A.D. 801), it is the meaning of the language when it was incorporated into the law which controls. *United States* v. *C.T. Tower & Sons*, 26 CCPA 1, T.D. 49534; *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388; *E. Dillingham, Inc., et al.* v. *United States*, 48 CCPA 46, C.A.D. 762.

Furthermore, we fail to see the analogy to the instant case, since the question of entireties was not involved, and we do not consider the case as an authority for the proposition that a fashion trend alone will suffice to make two separate tariff entities an entirety for tariff purposes.

In the *Baltimore & Ohio* case, *supra*, the principal issue was one of chief use. The court was there concerned with the question of whether or not certain after-dinner cups and saucers were properly classified as decorated china tableware. In confirming this court's conclusion that they were not, our appellate court held these items to be ornamental articles by reason of a preponderance of proof that they were chiefly used for display, not for drinking. Although a new fad was found to be responsible for a different chief use of these articles, there is otherwise no similarity with the issue in the instant case. The question of entireties was not involved in the *Baltimore & Ohio* case, and a new

chief use created by a change in fashion has not been established in the case before us.

In both *The Specialty House* and *Geo. S. Bush* cases, *supra*, the issue was also unrelated to that presently at bar. The subject of these two cases was essentially the same—colored silk squares which, in the *Bush* case, were held to be "silk handkerchiefs," and, in *The Specialty House* case, were held to be "articles of wearing apparel." Plaintiff herein intimates that, by distinguishing the *Bush* case, the Court of Customs and Patent Appeals, in *The Specialty House* case, was recognizing new uses of wearing apparel. True as this may be, the plaintiff prevailed in *The Specialty House* case not because the court recognized new uses for the articles in question, which it admittedly did, but rather because plaintiff introduced a substantial preponderance of proof of commercial designation that the subject silk squares were not commercially known as handkerchiefs.

Only the case of *Charles Garcia & Co., Inc.* v. *United States*, 44 Cust. Ct. 282, C.D. 2187, affirmed in *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780, cited by plaintiff herein, would seem to be relevant to the entireties question, but a close examination thereof shows that it is also clearly distinguishable from the facts in the instant protest. In *Garcia*, the manufacturer had designed a unique item, a dual purpose fishing reel which was adaptable to both light and heavy fishing simply by substituting one detachable line spool for the other. The collector considered the reel and one of the spools as an entirety, but regarded the other spool which was supplied therewith as a separate entity for duty purposes. Plaintiff maintained, as was held by this court and the Court of Customs and Patent Appeals, that both spools were integral parts of a dual-purpose reel and, as such, the reel and both of the spools with which it came supplied should be considered as entireties for tariff purposes. But a clear distinction is apparent upon close comparison of the merchandise involved in *Garcia* with that in the case at bar. In *Garcia*, it is not a purely subjective element, such as "good taste" or "fashion," which compels the use of these spools with the accompanying reels. Rather, it is a matter of mechanical adaptability which irrevocably commits these spools for use *solely* with the particular reels. Even if he so desired, the angler could not select another make or model reel for use with one of the spools in question. The component parts of the reel were not only designed, manufactured, and intended for use with their complementary counterparts, but, in fact, none other than the designed constituents would be operational. However, with regard to the situation at bar, what else is there besides the wholly subjective whims of the designer or wearer that forces the cabana top to be worn with its accompanying shorts? Indeed, there is nothing so inherently repugnant to the eye about wearing the blouse from one cabana set

together with the shorts from another entirely different set. Although the end product may not be a color- or fabric-matched coordinate, there is no reason why a proper selection could not produce as fashionable a result as if they had been designed and intended as a set.

We certainly do not think that such a variable element as a designer's conception of "fashion" or "eye appeal" or the wearer's personal taste should be the factor determinative of whether these cabana sets should be dutiable as entireties or as separate entities. We believe a sounder basis for this distinction was enunciated by this court in the case of *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, cited in our previous decision of this case, wherein the first division, speaking through the late Judge Mollison, stated:

> * * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

Herein we see that the imported articles of merchandise retain their separate identities as shirts and shorts; that their functions are essentially the same whether the component parts are used together as a set or with other garments; that the identity of these garments is not subordinated to the creation of a new article of commerce. In the prior decision of this case, we relied on the case of *United States* v. *Schoen & Co., Inc.*, 20 CCPA 370, T.D. 46133. After a careful consideration of the additional testimony, exhibits, and briefs, we see no reason why we should deviate either from our reliance on the *Schoen* case, *supra*, as dispositive of the issue at bar or from the decision previously rendered. For the reasons hereinbefore discussed, we are constrained to hold that the contentions of the plaintiff herein are without merit. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.