MINIATURE FASHIONS, INC. *v.* UNITED STATES   (No. 5229)*

United States Court of Customs and Patent Appeals,
December 8, 1966

*Siegel, Mandell & Davidson* (*David Serko, Harvey A. Isaacs*, of counsel) for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Alfred A. Taylor, Jr.*, for the United States.

[Oral argument November 9, 1966 by Mr. Isaacs and Mr. Vance]

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Associate Judges, and Judge WILLIAM H. KIRKPATRICK**

SMITH, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Customs Court, Second Division, overruling appellant-importer's protest and sustaining the classifications of the collector. In its first decision the court overruled the protest, 52 Cust. Ct. 26, C.D. 2429. A rehearing was granted for the submission of further evidence, 52 Cust. Ct. 306, Abs. 68408. On rehearing, the court adhered to its original decision, 55 Cust. Ct. 154, C.D. 2568.

The imported merchandise consists of "cabana sets," described by the court below as "two-piece shirt-short sets." The customs collec-

---

**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

tor classified the shorts as clothing and articles of wearing apparel, n.s.p.f., 20% ad val., and the shirts as shirts, 25% ad val.[1] Appellant claims the cabana sets are entireties within the meaning of customs law, and are properly dutiable as clothing and articles of wearing apparel, n.s.p.f., 20% ad val.

The sole issue is whether, in view of the evidence of record consisting of testimony and exhibits, the lower court correctly concluded that the applicable law excluded the cabana sets from classification as entireties.

The lower court in its first opinion summarized the testimony as follows:

In substance, the testimony given by the witnesses for the plaintiff, who have all had experience in the production and sale of merchandise such as is here involved, tends to establish on the primary issue that the subject cabana sets were styled in this country, but manufactured in Japan. The items were designed as a unit, matched as to color, print, and fabric; imported as a unit, pinned together; invoiced as a unit; and invariably sold as a unit, both at wholesale and by retail establishments. They are inexpensive articles of children's apparel, which have very little, if any, value when separated. They do not even warrant the expense of removing the pins which attach the two pieces together, and should one of the parts be damaged, the entire set would ordinarily be returned for credit or replacement.

As stated by witness, Leon Swergold, one of the original owners of plaintiff company:

* * * When we get one of them back, it is impossible to replace them because you cannot match to make a set out of it, so generally we put it in the waste basket or we give it away to a charity. It cannot be sold separately.

Although the evidence preponderates that these outfits were coordinated to be sold and worn as single units, there is, nevertheless, testimony to the effect that, in the last analysis, the taste of the wearer must ultimately dictate whether the parts are always worn as a unit or are, in fact, interchanged with other shirts or shorts, as the case may be.

In its second opinion the court adhered to the above summary of testimony. It summarized the testimony of two additional witnesses as follows:

* * * In the main, these two witnesses testified to the ever-increasing impact that fashion and design have had on the children's wear industry since the end of the Second World War. It was mentioned that, since the mid-1940's, people, in general, have become increasingly style conscious and interested in eye-appealing apparel for men, women, and children alike. On the direct examination of Mrs. Stote, it was further brought out that, because of this recent trend toward recognizing fashion, garments like those in issue perform a dual function in the child's wardrobe—first and foremost, to clothe the child and, second, to do this in an eye-pleasing manner.

---

[1] Paragraph 919, as modified, 82 Treas. Dec. 305, T.D. 51802, sets forth the classifications relied on by the collector and the classification urged by appellant.

The lower court, in considering the applicable law, stated "the question of what constitutes an entirety has given rise to much perplexing litigation." It discerned two lines of decisions wherein "the doctrine of entireties may be said to have developed." The lower court, quoting from *Altman & Co.* v. *United States*, 13 Cust. App. 315, 318, T.D. 41232, expressed the "principle" of entireties as follows:

\* \* \* if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or enclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

It also approved, as a "concise explanation of the principle," the following from *Donalds Ltd.* v. *United States*, 32 Cust. Ct. 310, 315, C.D. 1619:

\* \* \* If what is imported as a unit is actually and commercially two or more individual entities, which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

In both the above cases the court found that the involved goods were entireties. In *Altman* the Government successfully argued that women's corsets and lace trimmings in separate packages were entireties, notwithstanding the articles were "salable separately." The court found from the evidence that "the customary way of selling the corsets in question is with the trimmings aforesaid sewed and attached to them." It then stated, 13 Ct. Cust. App. at 316:

It is manifest, from a consideration of these facts, that these goods were imported for the purpose of making therefrom a finished and completed article of commerce; that the various parts were designed to be used together and not separately, and that this was, in fact, the actual major use which was made of them by the importer.

In *Donalds*, the importer successfully argued that certain nasal inhalers consisting of a holder and a cylindrical cotton pad impregnated with inhalant were entireties. The inhalant was also imported and sold separately. The court, in reaching its decision, considered that classification was determined by the condition of the inhalers at the time of importation, citing *United States* v. *Schoverling*, 146 U.S. 76 1892), and that "the actual nature of the article of commerce, or commercial entity, involved must be taken as the determinant," 32 Cust. Ct. at 314, commenting on *Altman*, supra.

The lower court stated,[2] and we agree:

The difficulty which is experienced in this type of case is not so much the formulation of a workable rule as it is the application of the provisions thereof to a given factual situation. Where it is apparent that the components of an importation have no useful function until joined into a single entity, it is, of course, relatively easy to say that the result constitutes an entirety. Where, however the several components of a unit are to any extent alone susceptible of a separate use, the question of whether their individual identities are subordinated to the newly created entity is not so readily answered.

The lower court considered the decision in *United States* v. *Schoen & Co.*, 20 CCPA 370, T.D. 46133, as "dispositive of the issue at bar." There the importer successfully argued that embroidered blouses and silk skirts, matched in color, were not entireties. The court found the Government's reliance on the statement from *Altman*, supra, as misplaced, stating, 20 CCPA at 372:

This language relied upon by the Government is not applicable to the case at bar for the reason that there is nothing in the record to show that the said blouses and skirts were designed to form, when joined or attached together, a complete article of commerce, or that the importer intended so to use them, but on the contrary the testimony affirmatively shows that the said skirts and blouses were not designed to form a complete article of commerce, nor were they used as such by the importer.

Judge Bland, in concurrence, set forth in great detail the evidence before the court as follows, 20 CCPA at 373:

The testimony shows that while the two garments were matched as to color, they were often sold separately, and that the importer had left over in his store 21 blouses more than he had skirts, although the same number of each had been imported. This was due to the fact that the skirts could be bought separately and that he sold black skirts with colored blouses.

The general manager for the importer testified that he bought colored blouses and sold them with black skirts and bought them on the same invoices "in this shipment." There is some doubt as to whether the witness meant to say that the black skirts were imported by him or bought elsewhere. At any rate the testimony shows that there is nothing about the colored blouse which makes its use dependent upon the particular skirt of the same color.

We think the situation presented in *Schoen* is quite dissimilar from the facts presented here, and, accordingly, that case is not dispositive of the issue here.

However, appellee in its brief cites *Lang Co.* v. *United States*, 15 Ct. Cust. App. 341, T.D. 42495, not considered below, arguing it "is on all

---

[2] Appellant suggested below that "the problem of entireties is essentially one of function ;"—

that when, in assembly, the parts are both necessary for the operation of the whole, and in conjunction therewith perform a function different from that which they individually serve, a new entity, dutiable as an entirety, has been created.

In answer to this suggestion, the lower court commented:

This is, to our way of thinking, simply a restatement of the general proposition that if the identity of the components is submerged into that of a newly created entity, an entirety exists. It offers no absolute solution to the complex problem of entireties.

fours with the facts of this case and the decisions below." In *Lang* the importer unsuccessfully argued that tablecloths and napkins were entireties. The goods were made to match and sold in sets. The tablecloths were classified as "table damask." Concerning the napkins, the court stated, 15 Ct. Cust. App. at 342:

> In the *Altman & Co.* case, supra, certain corsets and lace trimmings used to trim the corsets were held to be entireties. They were separate and unattached, but in the same container. This court held that they were entireties. We do not regard this case as supporting the contentions of appellants. There the lace was cut and separately prepared to be used on the particular corset it accompanied and no other, and could not be used, practicably, in any other way. It was a part of the corset. In the instant case the tablecloth is complete without the napkins. The napkins are complete articles independent of the tablecloth. The mere fact that they may be bought, sold, and used together, in sets, does not require that they be regarded as entireties for tariff purposes.

The court in its opinion distinguished *Altman* as involving lace which "could not be used, practicably, in any other way," despite evidence in *Altman* of the separate salability of the lace. It did not take issue with the discussion in *Altman* of cases involving entireties. Considering the opinion in *Lang* as a whole, it seems the court was impressed with the fact that Congress had expressly provided separate classifications for table damask and napkins. Classifying the sets as entireties, according to the opinion, would circumvent the intent of Congress for "If Congress had not wanted napkins to be separately assessed it would not have named them specifically in the act." 15 Ct. Cust. App. at 342.

From the authorities discussed in the opinions below and the argument presented here, it is apparent that ▮ the doctrine of entireties is to be used as an aid to ascertain proper classification. Where Congress has not created an express classification to govern, the problem is one of ascertaining the most suitable classification. The result reached in *Lang* appears to place the doctrine of entireties in its proper perspective. Thus whatever criteria from the doctrine of entireties is applied, e.g., "function," "use," "individual entities," "newly created entity," "intent," "design" or "commercial unit," such criteria may not circumvent the intent of Congress.

The problem in the instant case is that the appellee, obviously utilizing the criteria of the doctrine of entireties that supports its position, argues each portion of the goods retains its "identity and function" when combined. Further, discarding "fashion," a wearer may combine any upper and lower portion he or she so desires, or their parents allow, without any attenuation of "identity and function." The upper portion always functions as a shirt. Appellant does not dispute this logic. Rather, emphasizing other portions of the doctrine of entireties, it argues that it has imported a new "commercial entity," recognized by the trade as such, i.e., "cabana sets." It has shown that

the imported goods are always sold as a unit and should one of the parts be damaged, the entire set is returned for credit or replacement. Such returns are either placed in the waste basket or given to charity. Appellee does not disagree.

It is apparent that the doctrine of entireties, because of its scope, can lead to two contrary conclusions depending on what criteria are given controlling effect. It is also apparent that no decision here advanced by the parties is dispositive of the issue.

Considering all of the evidence of record and the applicable law, we think the imported goods are more properly classified as entireties under paragraph 919 as articles of clothing n.s.p.f.

Classification is determined by the condition of the articles at the time of importation. *United States* v. *Schoverling*, supra. Viewed at that time, the evidence shows that they were designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both in wholesale and retail channels. When the parts of the merchandise are separated and either part is returned for credit, or when both parts are returned for credit, the parts of the unit are either given to charity or placed in the waste basket. Thus, there appears to be no commercial value of the separate articles comprising the unit except as they are joined as a unit.

The lower court appears to have been impressed with the consideration that the taste of the wearer, in the last analysis, must ultimately dictate whether the articles are always worn as a unit. Appellee has implemented this with argument to the effect that frugal parents would not discard the upper portions should the shorts be damaged and that therefore the upper portion will be worn as a shirt.

We do not think that the taste of the wearer and the possibility that in the future he may choose to wear either article separately or in combination with other articles of wearing apparel can be made controlling as to the proper classification of the goods as imported. These considerations could dictate an opposite result to that reached in *R.F. Downing & Co.* v. *United States*, 49 Treas. Dec. 1161, Abs. 51414. Therein a two-piece dress suit (coat and trousers) and a three-piece dinner set (coat, vest and trousers) were held to be entireties. Appellee would have us distinguish this case on the basis of the difference between the formality attending the occasion on which these articles and the imported goods are worn, and inferentially, the difference in cost between the goods. Appellee also argues that "neither coat would be capable of fulfilling its intended use or purpose" without the accompanying trousers. We fail to see why the cabana sets, designed, imported and sold always as a unit, do not similarly qualify as an entirety. It is readily apparent that regardless of the cost of a particular article of wearing apparel, the possibility exists that someone

may, for his or her own reasons, wear but one portion of the designed apparel.[3]

We think appellant has shown, by clear and convincing evidence, that the imported articles are entireties for classification purposes in view of the applicable law.

There remains for consideration whether this determination circumvents any intent of Congress. ■ We think the evidence establishes that the upper portions of the cabana sets are not the "shirts" on which Congress has fixed a duty of 25% ad val. Appellant has imported what has been designed and sold exclusively as a unit. The upper portion, from the evidence of record, has no commercial value when returned. The upper portions are not imported as separate shirts. In view of the evidence we think the upper portion of the imported sets is more properly classified under paragraph 919 as part of an entirety of clothing rather than as a shirt under the same paragraph. We do not find this to be contrary to the considerations given effect in *Lang,* supra.

The judgment of the lower court is therefore *reversed.*

---

[3] A host of common items appears to the imagination where the wearer may desire to wear but one portion, from children's snow suits to pajamas to bathing suits.

