(C.D. 2097)

F. B. VANDEGRIFT & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 9, 1959)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as—

50 "SPEEDY" Moisture Testers, Type D.1. complete in polished oak cases.

The collector took duty on the testers at the rate of 13¾ per centum ad valorem under the provision for machines, not specially provided for, in paragraph 372 of the tariff act of 1930, as modified by the Presidential proclamation reported in T.D. 52739. The cases were separately assessed with duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412, as modified, for manufactures of wood, not specially provided for.

The protest claim is directed against the latter assessment of duty, claiming that the rate assessed on the cases should be the same as that assessed upon the testers, viz, 13¾ per centum ad valorem under paragraph 372 on the ground that the cases are essential to the efficient use of the testers and form an entirety therewith.

The uncontradicted evidence establishes that the moisture tester involved was designed as an instrument to be used in the field—not in the laboratory—for the purpose of testing the moisture content of sand, clay, paper, wool, cloth, cotton, wheat, seed, etc. It was designed to be carried to the foundry, plant, or other place where the material to be tested is located.

According to the record, the actual testing is done by placing a sample, weighing exactly 3 grams, of the material to be tested, together with a predetermined amount of a carbide absorbent, inside a device called a shaker. The shaker seems essentially to consist of a hollow metal container which may be opened at one end to insert the sample and the carbide and then tightly sealed. At the other end of the shaker, there is a dial calibrated in units of percentage of moisture.

Briefly stated—although the procedure is actually somewhat more complicated—the testing is done by shaking the sample and carbide inside the shaker in a certain manner and for a certain length of time,

during which the moisture of the sample combines with the carbide and creates a gas, the pressure of which, presumably, actuates the mechanism of the dial. The percentage of moisture shown on the dial is then read off, and the shaker emptied and cleaned out, and is ready for another test.

The record establishes that it is essential to the correct operation of the tester that the sample of the material to be tested weigh exactly 3 grams. For this purpose, there is provided a balance scale consisting of a standard and a beam, as well as a cradle and a pan. The standard has two agate bearings, and the beam rides thereon on knife edges when mounted on the standard. The beam is weighted at exactly 3 grams on one side of the knife edges, and, on the other side, provision is made for attaching the cradle and pan which holds the sample to be weighed.

The standard is mounted on a wooden platform which, in turn, is fastened to the case in such a manner that the platform may be raised to a horizontal position when the case is opened and securely fixed in that position by means of spring-actuated hardware built into the case.

The inside of the case is so compartmented and padded that the shaker and the balance scale parts, as well as a scoop to measure the carbide and insert it into the shaker, and a brush to clean out the shaker after each use, are, when the case is closed, securely held and yet are immediately available for use when the case is opened.

The tariff classification of cases (other than those used solely for transportation of contents to the United States—as to which see *John P. Herber & Co., Inc.* v. *United States*, 30 Cust. Ct. 193, C.D. 1519) as entireties with, or separate tariff entities from, their contents has, from time to time, been the subject of decision in this and our appellate court.

It should be noted that there are some provisions of the tariff act which specifically require classification as entireties of certain cases imported with their contents. The provisions in paragraph 343 for needlecases and in paragraph 1531 for fitted leather cases are examples of these. However, neither paragraph 372 nor paragraph 412, which are the only tariff provisions here involved, contains any manifestation of legislative intent on the subject of entireties with respect to cases and contents which might be classifiable thereunder.

A very clear line of cases relating to the situation with respect to certain cases imported with their contents is represented by the decision of the Court of Customs and Patent Appeals in the case of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 22 C.C.P.A. (Customs) 281, T.D. 47330. There, leather cases containing, or imported with, certain binoculars were held not to be entireties, but to

be separately dutiable. The decisions in those cases are founded upon the view that—

* * * They [the cases and the binoculars] were not designed to be, nor are they capable of being, assembled together to make a new article having a new name, character, or use. On the contrary, each is a separate, distinct, and complete entity, the cases being designed merely as suitable containers for the binoculars *when not in use* during, and subsequent to, their transportation to the United States.  [Italics added.]

We think that there are at least two characteristics pertaining to the cases at bar which distinguish them for tariff purposes from binocular cases. As pointed out by our appellate court in the *Hensel* case, *supra*, the latter do not have any function at all *while the binoculars are in use*, that is to say, while the binoculars are being used for viewing. The record shows that it is essential to the correct operation of the tester at bar that an accurately weighed sample of the material to be tested be provided, and, in view of the fact that the collector classified the shaker, scale, scoop, and brush collectively as a machine, not specially provided for, there is a tacit admission on the part of the defendant that the scale which was imported as part of the tester is a necessary part thereof. Consequently, the cases at bar *do have a function during the operation of the tester*—that of providing a platform for the scale, which is necessary for the operation of the tester. It should be noted that the scale is so constructed that it must have a platform to which it is securely fastened before it can be used.

The second characteristic which the case contributes to the imported testers is that of *portability*, that is to say, keeping all of the elements or parts required for the proper and efficient operation of the tester together and safe from damage while being transported to the location of the material to be tested. The record shows, and the sample before the court demonstrates, that without the case the *commercial entity* imported would not be a *portable* moisture tester, the essence of which is ability to safely transport rather delicate instruments, the scale and the shaker, to different locations, and to provide the base of operations and a suitable platform to assist in carrying out the desired tests. Without the case, portability of the moisture testers would be impracticable, according to the record, and while it may be that another platform *could* be substituted for that provided by the case, this merely points up the fact that the case provides something, to wit, a platform, without which the tester could not function.

Reduced to its barest elements, the question of entireties resolves itself into a question of what is the article which was actually imported—whether it was a single commercial entity made up of two or more elements or parts, or whether the importation actually consisted of several commercial entities which, although imported to-

gether, retained their individual identities and did not merge into that of a combined entity. *Donalds Ltd., Inc.* v. *United States,* 32 Cust. Ct. 310, C.D. 1619.

Here, we have an article known as a portable moisture tester, the portability feature of which very largely, if not exclusively, is due to the case. There is uncontradicted testimony that such portable moisture testers are always furnished with wooden cases such as those at bar, from which testimony and other evidence in the case the court can infer that the complete commercial entity which is a portable moisture tester is one which has such a case. In that sense, the case does merge with the other parts to form the complete article of commerce.

Moreover, if the scale, scoop, and brush be considered to be entireties with, or essential parts of, the tester, as they were classified by the collector, it would seem that the case could not be omitted from the same category. Just as another platform could be substituted for the case, any scale which would accurately weigh 3 grams could be substituted for the scale imported with the tester, any scoop or measuring spoon of the same capacity could substitute for the imported scoop, and any brush of similar size could substitute for the one included in the shipment. Whatever reasoning supports the inclusion of the scale, scoop, and brush as elements of an entirety or as parts of a whole machine or single commercial entity also supports the inclusion of the case.

The whole is the sum of its parts, and we are satisfied that the whole commercial entity which was imported here was a portable moisture tester, a necessary part of which is the case in which the other parts of the tester is contained. No administrative practice, judicial decision, or manifest legislative intent indicating that such parts of a portable moisture tester, or that parts of such a machine, should be separately classified for duty purposes, we hold that the cases at bar are properly dutiable at the same rate as the other parts of the testers, namely, at 13¾ per centum ad valorem under paragraph 372, as modified, as claimed.

Judgment will issue accordingly.