(C.D. 2127)

QUALITY MARBLE & GRANITE Co.
ARTHUR J. FRITZ & Co. ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 22, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The plaintiffs in these cases imported certain marble which is described on the invoices as "slabs" and on which duty was assessed at the rate of 22½ or 23½ per centum ad valorem (depending upon the date of importation) under the provision in paragraph 232(d) of the Tariff Act of 1930, as modified by T.D. 54108, for—

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for.

The claim in each of the protests is for duty at the rate of 7 cents per superficial foot under the provision in paragraph 232(b) of the same act, as modified by T.D. 52373 and T.D. 52476, for—

Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:

\*      \*      \*      \*      \*      \*      \*

If polished in whole or in part (whether or not rubbed) :
If not more than one inch in thickness.

There is no question but that all of the imported merchandise consists of flat pieces of marble in various shapes; that all of it is less than 1 inch thick; and that each piece has one face surface and all edges polished.

As has been stated, as imported, the merchandise came in various shapes, including ovals, boomerangs, circles, rectangles, and squares. At the trial of the issue, counsel for the plaintiffs abandoned the protests as to all shapes, other than circles, rectangles, and squares, and also as to all pieces having edges other than those shown on plaintiffs' illustrative exhibit 1.

Plaintiffs' illustrative exhibit 1 is a sample offered as representing the edges on the circular pieces, but it is also representative of the edges on the square and rectangular pieces. It exhibits edges which are not sharp at the corners or where any two surfaces meet, but which are somewhat rounded, the radius of the curve of the rounding being comparatively small.

Whether the rounded edge of plaintiffs' illustrative exhibit 1 constitutes an "arris" was the subject of disagreement between the witness called by the plaintiffs, the vice president and manager of the importer and ultimate consignee of the merchandise, and the witness called by the defendant, a marble mason and owner of a shop in which

marble is worked. Plaintiffs' witness said the edge is not an arris edge, while defendant's witness said it is.

As applied to marble, an arris appears to be the corner at which two surfaces meet, that is to say, the place where two edges (or side surfaces), or an edge and a face (or top or bottom surface) meet. An arris edge appears to be an edge which has been rounded off, and the testimony of the witness for the defendant is to the effect that whenever the edges as well as the top or bottom faces of marble slabs are polished an arris edge is made for practical reasons, i.e., so that the sharp edge will not "spall off" or chip.

The difference of opinion of the two witnesses as to whether the edge on plaintiffs' illustrative exhibit 1 was or was not an arris edge was based upon the degree of roundness exhibited by the edge on the sample. We think it is apparent that the edge was rounded off, but whether that constitutes an arris or not is immaterial, in view of the conclusion we have reached herein.

While there is also some disagreement as to the uses of the imported marble pieces, it does appear that 90 per centum of pieces, such as the imported articles, is sold to furniture manufacturers who generally use them in their imported condition, principally in the manufacture of tables of various kinds. It also appears that, in some relatively few cases, the furniture manufacturers cut or otherwise work the pieces when manufacturing furniture with their use; that some of the imported pieces in rectangular shape are sold to the building industry for use as pullman tops, fireplace hearths, bench tops, and shelves; and that, aside from the polished and rounded-off edges, there is nothing about the imported pieces which dedicates them to any particular use, but all may be further worked and used for any purpose for which a slab or a piece of marble of the particular dimensions may be suitable. Of course, it is obvious that if the pieces were cut in being further worked, the benefit of the polishing and rounding off of the edges might be wholly or partly lost.

In the brief filed in its behalf, counsel for the Government has stated that "The question presented here is: When does a piece of marble cease to be a 'slab' for duty purposes and become a piece of marble partly manufactured into an article?"

In answering his own question, counsel urges that the testimony in the case shows that "the pieces of marble are virtually dedicated to use as parts of furniture, and as such are marble partly manufactured into articles."

We do not think that the question as posed by counsel is quite that presented by the issues in this case. First, counsel assumes that the terms "slabs" and "marble * * * partly manufactured into * * * articles" are necessarily mutually exclusive. Second, the question as

presented by counsel and his answer thereto overlook the fact that the tariff terms involved are not precisely those used in the question and answer.

We think there is a distinction between parts of an article made up of parts and an article, partly manufactured. The one connotes a portion of a thing, while the other connotes the thing in an unfinished or incompleted state. Consequently, even if the pieces of marble at bar are, by virtue of their size, shape, and finish, virtually dedicated (in the economic sense) to use as parts of furniture, to wit, as tops for tables, this would not indicate that they are partly manufactured *tables*. "Table," as referring to furniture, is defined in Webster's New International Dictionary, 2d edition, 1945, as—

An article of furniture, consisting of a smooth flat *slab*, board, or the like, fixed horizontally on legs or other support, and variously used, as in eating, writing, working, or gaming. [Italics added.]

Thus, if one had *either* a table top or the support therefor, he would not have a table in a partly manufactured state—he would have a part of a table. See *Jack Schaefer, Inc.* v. *United States*, 11 Cust. Ct. 78, C.D. 798, for a somewhat analogous situation.

It may be, although it does not appear to be, argued that even though the slabs at bar are not partly manufactured *tables*, they are wholly or partly manufactured *table tops*. One answer to that argument would be that the provision for marble articles evidently contemplates articles of the nature of monuments, benches, and vases, i.e., whole articles, and does not contemplate *parts* of such articles. Generally speaking, whenever in the tariff acts Congress has intended to provide for parts of articles as well as the articles themselves, it has used appropriate language to indicate that intent.

But, even assuming that the provision in paragraph 232(d) could be said to embrace wholly or partly manufactured table tops, it is clear that what would then be presented would be a question of relative specificity, for the articles at bar are just as surely "Slabs * * * of marble * * * Containing not less than four superficial inches * * * polished * * * in part * * * not more than one inch in thickness" as they are wholly or partly manufactured table tops. Even the dictionary definition hereinbefore quoted recognizes that a table top may be a slab.

In paragraph 232(b), Congress provided that slabs might be "polished in *whole* or in part" [italics added], that is to say, the edges as well as the faces might be polished without removing the pieces from the category of "slabs." The evidence given by the witnesses for both sides shows that if the edges are polished, it is either virtually impossible, or, in any event, not practical, to leave a sharp edge, inasmuch as such an edge would easily "spall off" or chip in use. Congress could hardly have intended to provide for slabs with

polished edges and at the same time intended that the usual and ordinary concomitant of polished edges, i.e., rounding off, would remove the articles from the category of "slabs." See also *Lyons Transport* v. *United States*, 41 Cust. Ct. 278, C.D. 2052.

The attributes which make the articles at bar particularly suitable for, and in the economic sense dedicated to, use as table tops are their size, shape, and finish. These attributes also are those of marble slabs. The tariff provision for marble slabs, paragraph 232 (b), contains only one limitation as to face (or superficial area) size, to wit, not less than 4 superficial inches, and the articles at bar meet that requirement. The other size dimension, thickness, is within the size permitted in the provision for slabs.

So far as shape is concerned, our appellate court pointed out, in the case of *Mutual Lamp Mfg. Co.* v. *United States*, 21 C.C.P.A. (Customs) 231, 235, T.D. 46762, that there is nothing in the context of the provision in paragraph 232(b) (nor is there anything in the definitions of the term "slab" contained in the opinion in the *Mutual* case) which would suggest that any slabs are excluded therefrom because of their shape.

As hereinabove pointed out, the finish of the articles at bar, i.e., polishing and rounding off of the edges, is within the finish permitted either directly or by necessary implication of the provisions of paragraph 232(b).

Consequently, in size, shape, and finish, the articles at bar are marble slabs within the contemplation of paragraph 232(b). Assuming, without deciding, that they are also wholly or partly manufactured articles of marble, the question would be one of relative specificity and legislative intent.

In this connection, it is to be noted that the provision for partly manufactured marble articles in paragraph 232(d) is modified by a "not specially provided for" clause, while the provision in paragraph 232(b) for slabs of marble is not so modified. Moreover, the provision for marble articles is more general in scope than the provision for marble slabs, which is a designation of a particular kind of marble article (assuming that it be considered an "article" at all). Obviously, as indicated by our appellate court in its opinion in the *Mutual* case, *supra*, to the extent that slabs may be considered manufactured or partly manufactured marble articles, Congress intended to exempt from the provisions of paragraph 232(d) and to levy duty thereon according to the provisions of paragraph 232(b). See also *United States* v. *McBride Studios*, 14 Ct. Cust. Appls. 321, T.D. 41956.

For the foregoing reasons, the claim in each of the protests for duty under paragraph 232(b) of the Tariff Act of 1930, as modified, is sustained only as to the items consisting of circles, rectangles, and

squares, having rounded-off edges, to which merchandise the claim was limited by counsel at the trial. In all other respects and as to all other merchandise, the protests are overruled.

Judgment will issue accordingly.