(C.D. 2531)

ARNART IMPORTS, INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided April 19, 1965)

*Siegel, Mandell & Davidson* (*David Serko, Murray Sklaroff*, and *Richard H. Abbey* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The merchandise of this litigation was included in an importation from Japan on December 17, 1956, at the port of New York. The litigated merchandise is described as wall plaques. Each plaque consists of a porcelain center with a raised figure or figures attached by metal toggles to a velvet pad and enclosed in a decorated wooden frame, to which frame the velvet pad is affixed by nails.

The importation includes three similar lots of these wall plaques. The collector liquidated one lot (item 6857 on the invoice) as entireties, including the porcelain center, the metal toggles, the velvet pad, and the wooden frame, at a duty rate of 45 percent ad valorem under paragraph 212, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade (T.D. 53865), it being conceded, that, as to those plaques, the component of chief value is porcelain.

The other two lots (items 7110 and 7387 on the invoice) were, however, not liquidated by the collector as entireties. The collector classified the wooden frames of those two items separately, under modified paragraph 412 of the Tariff Act of 1930, with duty at 15½ percent ad valorem; and the porcelain portions, with attached velvet pads and metal toggles, as entireties with duty at 45 percent ad valorem under modified paragraph 212. It is conceded that, as to the plaques of items 7110 and 7387, the component of chief value is wood.

The issue before us is whether, in the case of all three lots of these plaques, the merchandise does, in fact, constitute entireties for tariff purposes. If so, in the case of item 6857, since those plaques are conceded to be in chief value of porcelain, they are properly dutiable as liquidated. In the case of the plaques of items 7110 and 7387, inasmuch as wood is the component of chief value, plaintiff is entitled to duty refund if those plaques are also properly dutiable as entireties.

The protest, as amended, includes three alternative claims, viz, for duty at 15½ percent ad valorem under modified paragraph 412; or for duty at 16⅔ percent under modified paragraph 412; and, as to the merchandise of item 6857, an alternative claim that those plaques are dutiable at 45 percent only on the value of the porcelain portion and at 15½ percent on the value of the wooden frames, if it should be held that the merchandise does not constitute an entirety for tariff purposes.

Are these articles dutiable as entireties?

Defendant now concedes that all three lots of these wall plaques should be similarly classified, arguing that the proper classification of all is the collector's classification of items 7110 and 7387 (exhibit 2) and that his classification of item 6857 (exhibits 1 and 1-A) was erroneous.

What is or is not an entirety, for tariff purposes, is dependent on the facts in each instance. The cases, at best, only lay down guide lines, which the court follows and applies to the novel fact situations that continually come up.

The doctrine of entireties is, of course, a rule of classification. It rests upon the proposition that classification of imported articles for duty purposes is determined by the condition of the articles at the time of their importation. The problem in each case is to ascertain *what is* the article which is imported into the commerce of the United States, and then to ascertain how Congress has provided for duty assessment *on that article.*

From the record before us, it appears that the article which here has been imported into the commerce of the United States was an entirety, known as a wall plaque; that this article consisted of certain parts made of porcelain, velvet, metal, and wood; and that Congress provided that duty should be assessed on that article at the rate specified for the component material of chief value. As to lots 7110 and 7387, as above noted, the chief value component is wood; and as to lot 6857, the chief value component is porcelain.

Before importation the several parts of the plaques were fully assembled, fastened with the metal toggles and with nails. The toggles held the porcelain part to the velvet pad. The nails held the porcelain-velvet assembly to the frame. These plaques were offered for sale and actually were sold in their assembled condition, as imported. None of the several parts was ever sold separately; nor were separate parts available to customers.

Defendant's case rests on the conceded fact that it was possible to disassemble the imported article, and that when disassembled the wooden frame was still a frame and might be sold commercially as such. The record rather clearly shows that disassembly did not result in a commercially salable porcelain-velvet pad, because the act of disassembly damaged the pad and left at least one hole exposed. It seems to be the essence of defendant's contention that if an assembled article, imported as such, can be disassembled after importation so that one of the parts is salable, then both parts are separate tariff entities.

We do not read the precedents to that effect. Defendant relies in part on those cases that construed the status of paintings and similar art works, imported in frames. It should be observed, in the first place, that paintings and their frames may readily be disassembled in such a way that both are commercially salable. Paintings and frames are often sold as separate articles. Moreover, the cases defendant cites arose, largely, through the claims of importers that duty-free status of works of art should be extended to the frames in which they happened to be imported. *R. J. Godwin's Sons, Inc.* v. *United States,* 22 CCPA

340, T.D. 47343; *Kronfield, Saunders & Co. et al.* v. *United States,* 5 Ct. Cust. Appls. 222, T.D. 34399.

While here it was possible to disassemble the parts, as plaintiff's witness, its president, Mr. Arthur Tamchin, demonstrated, the fact is that toggles were removed with difficulty, the nails more easily. First, the porcelain and velvet were disassembled, making the separate velvet pad useless; thereafter, nails were removed and this permitted separation of the frame from the velvet pad. The demonstrated separation of the three components did not create three separate articles, imported for sale or salable as such in the commerce of the United States. The effect of separation was to destroy the commercial value of a significant part of what had been imported as a unit.

Mr. Tamchin was steadfast in his testimony that the only occasion for disassembly would be the repair or replacement of a broken part, and that neither the plaque nor the frame was ever sold separately. Replacement parts, he said, are never sold or supplied. Morever, although a frame might have some commercial value by itself, the poreclain-velvet assembly has no separate commercial value and, indeed, disassembly impairs the commercial value of the velvet pad.

Both parties, in their briefs, discuss *Ross Products, Inc.* v. *United States,* 43 Cust. Ct. 74, C.D. 2106. Plaintiff cites it as supporting the claim for classification of these wall plaques as entireties. Defendant distinguishes the *Ross* case on its facts. Both are right. The facts are different, as facts always, or almost always, are in litigated cases in which decision turns on whether or not the classification status of an imported article is an entirety. But the law laid down in *Ross* is relevant here, to the extent that it is applicable to our facts.

Judge Johnson, writing for the court in *Ross, supra,* said:

It has long been held that "if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately." *Altman & Co.* v. *United States,* 13 Ct. Cust. Appls. 315, 318, T.D. 41232; *Charles Garcia & Co., Inc.* v. *United States,* 45 C.C.P.A. (Customs) 1, C.A.D. 663; *United States* v. *H. K. Miyaka,* 22 C.C.P.A. (Customs) 38, T.D. 47039; *James Betesh Import Co.* v. *United States,* 40 Cust. Ct. 186, C.D. 1981.

In the instant case, there is uncontradicted testimony that this merchandise is imported, bought, and sold as a complete article of commerce; that it is so displayed and sold in retail stores and is so used in homes.  [P. 77.]

To like effect, in *F. B. Vandegrift & Co., Inc.* v. *United States,* 43 Cust. Ct. 22, C.D. 2097, Judge Mollison said:

Reduced to its barest elements, the question of entireties resolves itself into a question of what is the article which was actually imported—whether it was a single commercial entity made up of two or more elements or parts, or whether

the importation actually consisted of several commercial entities which, although imported together, retained their individual identities and did not merge into that of a combined entity. *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619. [Pp. 25, 26.]

We could add many other cases to these citations, but we deem it not necessary to do so. The record before us shows that these articles actually were imported as single commercial entities and that the importer intended to sell them and did sell them as such. They are a single commercial entity for tariff purposes, notwithstanding the fact that they could be disassembled after importation without commercial injury to one of the component parts. It is not essential to classification as entireties that imported articles should be incapable of being disassembled into parts. We are cited to no authority for such a proposition, and we have found none.

The protest claim to classification at a duty rate of 15½ percent as entireties seems to have been abandoned. At the least, it must be dismissed for failure to prosecute. It is dismissed.

Inasmuch as the plaques of invoice item 6857 were correctly classified as intireties, the protest claim as to the plaques of item 6857 is overruled.

The protest claim for classification of the plaques of invoice items 7387 and 7110, under paragraph 412, as modified, at a duty rate of 16⅔ percent, as entireties in chief value of wood, is sustained.

Judgment will be entered accordingly.