(C.D. 2687)

E. M. Stevens Corp. *v.* United States

United States Customs Court, First Division

(Decided May 18, 1966)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before OLIVER and NICHOLS, Judges, and WILSON, Senior Judge

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, is designated on the invoices as coat brush shoehorn, combination clothesbrush and shoehorn (Groomaide), and folding shoehorn with brush. The articles were imported from Japan in 1959 and 1960[1] and were assessed with duty at 35 per centum ad valorem under paragraph 1506 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, and T.D. 53877, on the brush portion, and at 17 per centum ad valorem under paragraph 339 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, on the shoehorn portion. It is claimed that the articles are properly dutiable as entireties at 17 per centum ad valorem under said paragraph 339, as modified, or at 19 per centum ad valorem under paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108.

The pertinent provisions of the tariff act, as modified, are as follows:

---

[1] The case was tried at New York and was submitted before Judges Oliver and Wilson on June 2, 1964. Plaintiff's brief was filed on July 27, 1965. Defendant's brief was filed on January 20, 1966.

[Par. 1506, as modified by T.D. 53865 and T.D. 53877.]
Brushes, not specially provided for (except paint brushes) _____ 35% ad val.

[Par. 339, as modified by T.D. 54108.] Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

\*     \*     \*     \*     \*     \*     \*

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

\*     \*     \*     \*     \*     \*     \*

Other base metal:

\*     \*     \*     \*     \*     \*     \*

Other _____ \* \* \*     17% ad val.

[Par. 397, as modified by T.D. 54108.]   Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Not wholly or in chief value of tin or tin plate:

\*     \*     \*     \*     \*     \*     \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*)_____ \* \* \* 19% ad val.

This case is in part a retrial of the issues involved in *E. M. Stevens Corp.* v. *United States*, 49 Cust. Ct. 203, Abstract 66971, rehearing denied, 49 Cust. Ct. 270, Abstract 67137. The sample marked plaintiff's exhibit 1 in this case was exhibit 1 in the preceding case. It consists of a heavy wire frame in a single piece doubled around a brush, whose back has its sides slotted to receive it, and with the ends meeting in a shoehorn. The overall length of the article is about 20 inches, the brush being about 5 inches long and the shoehorn about 5½ inches long. The brush has a wooden back, and the material of the bristles is undisclosed.

Exhibit 2 in the instant case is somewhat different. Its overall length is about 14 inches, but the brush and shoehorn portions are about the same size as those in exhibit 1. The prongs between which the brush is set come together into a tubelike piece about 1½ inches long to which is attached by a screw the shoehorn portion. The screw enables the shoehorn to be folded over, making the folded length of the article about 9½ inches.

It was stipulated that both articles are composed in chief value of steel, not plated with any precious or semiprecious metals.

At the trial, Maxwell M. Bentley testified that he is president of Maxwell Bentley Manufacturing Co. and vice president of E. M. Stevens Corp. The business of these firms is the sale of business gifts to specialty jobbers throughout the United States who sell merchandise to business firms to be given away as gifts for customers and employees. The witness was familiar with the merchandise E. M. Stevens markets and imports, and designed or developed ideas for such merchandise. He was familiar with the articles involved herein and said that exhibit 1 represented the items on the invoices and entries covered by protest 61/18631 and that exhibit 2 represented those on the invoice and entry covered by protest 62/5009.

Mr. Bentley stated that the merchandise represented by exhibit 1 had been purchased because it was a rather unique combination of two useful items in one, a clothesbrush and a shoehorn. While the brush portion is not affixed firmly in the sample, the merchandise was not sold in that condition. At the trial, the witness removed the brush by springing the wire apart. He had never seen the brush actually removed for use or on the retail counter.

The witness testified that the article is used as a long-handled brush to brush the pants and coat, by grasping the wire at a point close to the shoehorn. The shoehorn is not used when the brush is being used as it is more comfortable to grip the wire portion. Thus, the shoehorn is not essential to the brush. However, when the article is being used as a long-handled shoehorn, the back of the brush forms a nice handle. The block part and not the bristles are grasped in the hand. If the brush were removed (as it was at the trial), the remainder is still a shoehorn, but not nearly as useful, according to the witness, because the wire is not rigid and the hands would slip down.

The witness said that exhibit 2 was designed as an improvement of exhibit 1, in order to have the long length and the back of the brush as a handle, while at the same time having an article small enough to put in a club locker or carry while traveling. It is a combination article having two different utilities or purposes, as a shoehorn and as a clothesbrush. The shoehorn portion folds up and is used as the brush handle. The folding feature facilitates use of the brush for traveling, but the article can also be used in the home or kept in a club locker. Mr. Bentley had seen the article used at a country club on three occasions and had used it himself. He had seen it used in his own home.

According to the witness, the brush and shoehorn portions of both exhibits 1 and 2 are never sold, distributed, or used separately. Exhibit 1 is sold under the name "Groomaide" and exhibit 2 as a "Groomaide" or "Folding Groomaide." The name originated with

the witness or his associate, Mr. Klein, to describe an item for use in good grooming.

The primary issue in this case is whether or not the articles are entireties for tariff purposes, giving as we do, full weight to the evidence that they are securely fastened together, are not meant to be, and are not in fact, separated after importation. As stated, exhibit 1 was before the court in *E. M. Stevens Corp.* v. *United States, supra*, at which time the court held that the article was not classifiable as an entirety. The court stated (p. 204) :

In determining whether an imported combination article is one in which the individual identities of the parts have been subordinated to that of the combination, it is apparent that, to constitute an entirety in such cases, there must emerge from the joining of two or more parts either (1) a new article which has a character or use different from that of any of the parts (compare *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981), or (2) an article the predominant element of which is one of the parts of the combination, the other parts being merely incidental to the predominant part insofar as the character or use of the combination is concerned (compare *Artgift Corp.* v. *United States*, 30 Cust. Ct. 372, Abstract 57135).

In both cases, the combined article takes classification under the tariff provision applicable to it as a single, whole article. This is so because the doctrine of entireties is based upon the proposition that the tariff classification of imported articles is determined by their condition, i.e., what they actually are, at the time of importation. *United States* v. *Schoverling, Daly & Gales*, 146 U.S. 76, 36 Law. ed. 893.

From an examination of the evidence before us, including the sample, plaintiff's exhibit 1, we are satisfied that the present imported articles do not consist of any of those types of combination articles which are entitled to classification as tariff entireties. There is no merger of brush and shoehorn which created an article which can be said to be something more than either a brush or a shoehorn, nor one in which either the brush or the shoehorn is clearly the predominant feature. Each article is used independently of the other. The mere fact that two articles are joined together and are imported and intended to be sold together as a unit does not necessarily create a tariff entirety. Compare *United States* v. *Wanamaker*, 20 CCPA (Customs) 367, T.D. 46132.

Nor does the conferring upon the combination of a trade name, "Groom-Aide," endow it with a tariff status which it otherwise would not have. What is before us is essentially a complete, long-handled shoehorn, to which a clothesbrush has been attached. The combination has no character or use different from that of its individual parts, and neither of the parts is incidental to the character and use of the other. Such a combination does not constitute an entirety for tariff purposes.

The above not having been refuted, and being dispositive of the evidence herein, including the new exhibit 2, we incorporate it in our opinion.

In support of its position contrary to the holding in the *Stevens* case, plaintiff relies upon *Arnart Imports, Inc.* v. *United States*, 54 Cust. Ct. 187, C.D. 2531, and the cases cited therein. The article there was a wall plaque, consisting of a porcelain center with raised figures, attached to a velvet pad and enclosed in a decorated wooden frame, to which the velvet pad was attached. It was possible to disassemble the article, and the wooden frame would still be a frame which might be sold as such, although the other parts would not be commercially salable. The court held that the article was a single commercial entity for tariff purposes, notwithstanding the fact that it could be disassembled after importation without injury to one of the parts.

The distinction between that case and the instant case is obvious. There the parts were subordinated to the whole, which had a single use, as a decorative item. Here we have a combination article, having two separate and independent uses, with the wire part being used in common as a handle. The attempt to suggest that the use of either was aided by presence of the other was not convincing. The back of the brush allegedly may serve as a handle when the shoehorn is being used, but awkwardly, as it seems on a trial in chambers, and, in addition, in exhibit 2, the folded over shoehorn may also serve as a handle when the brush is being used, though the hand does not fit it comfortably.

The plaintiff cites other authorities, which we have also considered carefully. Out of the many cases dealing with entireties, the following, not already discussed, we deem the most helpful.

The entireties rule was summarized by Judge Mollison in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 315, C.D. 1619, as follows:

* * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

In a later case, *F. B. Vandegrift & Co., Inc.* v. *United States*, 43 Cust. Ct. 22, 25–26, C.D. 2097, Judge Mollison stated the question even more succinctly:

Reduced to its barest elements, the question of entireties resolves itself into a question of what is the article which was actually imported—whether it was a single commercial entity made up of two or more elements or parts, or whether the importation actually consisted of several commercial entities which, although imported together,

retained their individual identities and did not merge into that of a combined entity.

Both of these cases involved articles which were held to be entireties: In the *Donalds* case, an inhaler, consisting of three parts, a holder, cotton core, and inhalant, in which the individual identities of the parts had been subordinated in the creation of a combined entity bearing a name different from the names of its parts; and in the *Vandegrift* case, cases and portable moisture testers, where the cases imparted portability to the testers and were used during the operation of the tester as platforms for the scales which were necessary for use of the tester.

In *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, T.D. 39322, the court pointed out (p. 411):

* * * where an importation consists of two distinct and segregable tariff entities, which, however, are attached to one another or commingled together, they should nevertheless be separately treated in the assessment, each accordingly bearing the rate of duty applicable to it, or admitted free of duty if entitled thereto. * * *

The merchandise there consisted of carcasses of calves with the skins on. Although they were assessed with duty as entireties, the collector had reported that the skins were segregable from the veal, and there was evidence that carcasses with the skins attached were quoted, bought, and sold as consisting in fact of two commodities instead of one. The court held that they should have been classified separately, noting that in tariff nomenclature veal and calfskins have been treated as separate entities.

The merchandise involved in *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 CCPA 367, T.D. 46132, consisted of women's handbags, fitted with mirror, purse, and strap watch. A small watch was attached at each of its ends to straps, which straps were attached rather tightly to the sides of the bag. The watch filled out what would otherwise have been a gap in the strap. The court held they were not entireties on the ground that the completed article was a novelty; that there was no natural affinity or relation between a handbag and a watch, and that neither was normally essential to the completeness of the other. This case was followed in *United States* v. *Saks & Co., Inc.*, 21 CCPA 186, T.D. 46714, which involved a handbag having a watch set in one corner on the outside.

In *Selsi Co., Inc.* v. *United States*, 2 Cust. Ct. 371, C.D. 160, it was held that so-called weather sets, each composed of an aneroid barometer, a hygrometer, and a thermometer, all imported mounted on a wooden frame and base, were erroneously classified as entireties. There was evidence that the articles were never broken down and the parts sold

separately, but the barometers, thermometers, and hygrometers were entirely separate, distinct, and independent articles; the operation of one in no way affected the functioning of the others. The court stated that articles are not regarded as entireties for dutiable purposes where there is no natural affinity in composition and where one of the articles is complete in all its parts without regard to the article imported to be used with it, citing many cases.

In *Naumes Forwarding Service* v. *United States*, 30 Cust. Ct. 441, Abstract 57300, the merchandise, a combination buckle and lighter, was assessed with duty separately on the buckle and lighter portions. The court (per Oliver, C. J.) held that the components were designed to form a complete article of commerce, which, when assembled, was neither a lighter nor a buckle. It stated (p. 443):

\* \* \* The lighter is designed to, and actually does, form an integral part of the buckle, and the same is true with respect to the buckle and its relationship to the lighter. The back screw of the lighter is the fastening device that snaps together the front and back pieces of the buckle. The front plate of the buckle is a housing for the lighter. Without that housing, the lighter would not close, and if not closed, the wick would be exposed and the fluid would evaporate, thereby rendering the lighter useless. The back plate, with its sharp flange on each side and stamped-out portion, is not only unattractive, but also impractical, for use as a buckle, without attachment of the ornamental front piece. Considering this merchandise as a unit, it is more than either a buckle or a lighter, although the presence of each is essential to the finished article now before us.

The article was, therefore, held dutiable as an entirety under paragraph 1527, as an article designed to be worn on apparel or attached to the person.

It is evident that the lighter and buckle were viewed as more integrally related to one another than are the shoehorn and brush in the instant case. The parts the lighter and buckle had in common were necessary to the use of each component. Here the brush and shoehorn are more definitely separate entities. The connecting portions are used in common, as handles, but otherwise the two have no relationship to each other. Although the two parts are physically and more or less permanently joined together, they retain their individual identities and have not merged into a new and different identity, that of the combination, nor is one predominant over the other. All articles which are physically joined together or have parts in common when imported have not been held to be entireties for tariff purposes. *United States* v. *Myers & Co.*, *supra*, cited with approval in *Geo. S. Bush & Co., Inc.* v. *United States*, 41 CCPA 33, 39, C.A.D. 525; *United States* v. *John Wanamaker, Philadelphia, Inc.*, *supra;* *United States* v. *Saks & Co., Inc.*, *supra;* *Selsi Co., Inc.* v. *United States*, *supra*.

There is no doubt herein, any more than in the *John Wanamaker* case, *supra*, and *Selsi Co., Inc., supra*, that the imported articles reach the ultimate consumer joined together substantially as imported. This is not a joinder made solely for its tariff effect. But if the fact were otherwise, it would possibly be difficult to say that it was significant in light of the doctrine that an importer may fashion his import in the manner that will obtain for it the most favorable tariff treatment. *United States* v. *Levitt, et al.*, 26 Fed. Cas. 919, No. 15,594; *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554; *Mercantile Stores Co., Inc.* v. *United States*, 36 Cust. Ct. 354, Abstract 59733.

Collectors of customs and their successors under the new organization must consider carefully whether an entirety has actually been created whenever, as here, an article designated *eo nomine* at a higher rate is claimed to be part of an entirety dutiable at a lower rate. Otherwise they would fail to protect the revenue system devised by the Congress. We must presume that the administrative decision is considered and informed. We must sustain it unless the articles themselves, as "potent witnesses," or the testimony, or both, are sufficient to establish otherwise. In light of our former decision, and the other cases cited, the exhibits and record fail to do this here. There is no alternative ground relied on which would call for relief in case we upheld the collector on the entirety issue, as we do.

However, if we took a different view on that issue, plaintiff would not be out of the shoals. The combination brush and shoehorn, as an entirety, would offer a striking parallel, legally, to the combination brush and sprinkler top which we held in *Nestle-Lemur Company* v. *United States*, 37 Cust. Ct. 209, C.D. 1825, to be dutiable, as an entirety, under the rate applicable to brushes, as required by paragraph 1559. Should the collector's decision on the entireties issue be just as wrong as we deem it right, there is to say the least, serious doubt, whether plaintiff has not benefited from it rather than being aggrieved.

Accordingly, the protests must be overruled. Judgment will be rendered accordingly.