(C.D. 2726)

ALTRAY Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 30, 1966)

*Barnes, Richardson & Colburn (Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Harvey A. Isaacs,* trial attorney), for the defendant.

Before DONLON, RICHARDSON, and LANDIS, Judges; DONLON, J., dissenting

RICHARDSON, Judge: The merchandise of the instant protests, described on the invoices as chocolate covered wafer tree pots, was imported at New York from West Germany and classified in liquidation, in part, as baked articles under 19 U.S.C.A., section 1001, paragraph 733 (paragraph 733, Tariff Act of 1930), as modified in T.D. 54108 with duty at 8½ per centum ad valorem, and, in part, as articles in chief value of artificial stems of visca under 19 U.S.C.A., section 1001, paragraph 1518 (paragraph 1518, Tariff Act of 1930), as modified

in T.D. 53865 and T.D. 53877 with duty at 50 per centum ad valorem. By way of amendment of the protests, it is claimed that the merchandise is properly dutiable at the rate of 10 per centum ad valorem as a nonenumerated manufactured article under 19 U.S.C.A., section 1001, paragraph 1558 (paragraph 1558, Tariff Act of 1930), as modified in T.D. 52739 and T.D. 52827.

The protests were submitted to the court upon a stipulation which reads as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff, and the Assistant Attorney General for the United States, subject to the approval of the Court, as follows:

1. That the merchandise involved on the protests enumerated in Schedule A, attached hereto, is described on the invoices as chocolate covered wafer tree pots, manufactured by Halba Limited of Switzerland.

2. That the attached sample is representative of the above described merchandise, and may be received in evidence as Plaintiff's Exhibit 1.

3. That the merchandise was assessed as follows: 65% of the invoice unit value as wafers under Paragraph 733 and T.D. 54108 at the rate of 8½% ad valorem, and 35% of the invoice unit value as articles in chief value of artificial stems of visca under Paragraph 1518 and T.D. 53865 at the rate of 50% ad valorem.

4. That in its condition as imported, the tree portion of Exhibit 1 is securely glued to the (wafer) pot portion.

5. That the imported merchandise, consisting of the pot and the tree, is always imported, and sold, as an entity and the tree and wafer pot are never sold separately or without being attached together. In the first instance, the imported article, tree and wafer pot, are used attached together. However, miniature Christmas trees similar to the tree portion of the imported merchandise, and illustrated by Defendant's Exhibit A, attached hereto, and which may be received in evidence, were sold and used as a separate and distinct article of commerce in the United States at the time of importation of the merchandise involved herein.

6. That the imported merchandise is most frequently dispensed as a party favor.

The controlling criteria for classification of the instant merchandise are set forth in paragraphs 4, 5, and 6 of the stipulation before the court. These stipulated facts are quite explicit as to what the merchandise before us is and obviate the necessity for further proof as to what it is. Consequently, the question of whether or not imported merchandise so identified and described is or is not enumerated or provided for in the tariff act is, at this point, a question of law for the court to decide; and this, irrespective of what the parties agree to or fail to agree to concerning enumeration or lack of enumeration in the tariff act with respect to the subject merchandise.

We are unable to find any specific provision of the tariff act under which the involved merchandise can properly be classified. Although

the article before us is composed of two component parts, each one bearing some affinity to articles covered under specific tariff provisions, namely, the wafer pot with articles provided for in paragraph 733 and the tree with articles provided for in paragraph 1518(a), the article is, nevertheless, dissimilar to each of its component parts inasmuch as it is something more or other than either of its component parts. See: *Ross Products, Inc.* v. *United States*, 43 Cust. Ct. 74, 77, C.D. 2106, where the court said:

It has long been held that "if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately." *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, 318, T.D. 41232; *Charles Garcia & Co. Inc.* v. *United States*, 45 C.C.P.A. (Customs) 1, C.A.D. 663; *United States* v. *H. K. Miyaka*, 22 C.C.P.A. (Customs) 38, T.D. 47039; *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981.

In the instant case, there is uncontradicted testimony that this merchandise is imported, bought, and sold as a complete article of commerce; that it is so displayed and sold in retail stores and is so used in homes.

Hence, classification of the subject article under paragraph 733 or paragraph 1518(a) either directly or by similitude is precluded.

Neither are we able to find any basis in the instant record for classification of the involved merchandise in accordance with the mixed materials clause of paragraph 1559(b). No reference is made in the stipulated facts to the nature of the materials of which the article before us is composed. The stipulated facts deal only with the method of joinder of the component parts to form the article (item 4), the condition of the article as imported and sold (item 5), and the uses of the article after importation (item 6). In the factual context in which this case must be decided, the "article" before us for classification purposes is the wafer tree pot, and not the tree.

[Generally speaking, whenever in the tariff acts Congress has intended to provide for parts of articles as well as the articles themselves, it has used appropriate language to indicate that intent. *Quality Marble & Granite Co.* v. *United States*, 43 Cust. Ct. 200, 203, C.D. 2127, reversed on other grounds, 48 CCPA 50, C.A.D. 763.]

Therefore, in the absence of language including parts of articles in paragraph 1518(a) as well as articles, the mixed materials clause of that paragraph has no relevancy to the issue here.

It is academic that for tariff purposes merchandise must be classified in its condition as imported. *United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540. The condition in which the

involved merchandise, represented herein by exhibit 1, was imported, requires us to regard the article as an entirety. A leading case on separable components of entireties is *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232, which provides numerous pertinent citations on our subject. There, the court, *inter alia*, stated in effect (page 318) that even if different components of an imported article should have separate commercial values and be salable separately, but which when attached together are designed to form a complete article of commerce, it should be held an entirety for tariff purposes.

The case at bar, in our opinion, offers even a stronger bid for classification as an entirety by virtue of the explicit language of the stipulation herein. Here it was stipulated that the imported merchandise, consisting of the pot and the tree, is always imported, and sold, as an entity and the tree and wafer pot are never sold separately or without being attached together. Even though it was also stipulated that miniature Christmas trees (defendant's exhibit A) similar to the tree portion of the imported merchandise were sold and used as separate and distinct articles of commerce in the United States at the time of importation of the merchandise here involved, there is no stipulation or suggestion that the remainder of the exhibit, to wit, the wafer pot (which it is stipulated was securely glued to the tree) was salable or usable as a separate and distinct article in any manner whatever. Furthermore, the style of construction of exhibit 1 demonstrates that the wafer pot portion was not an item salable separately.

A similar factual situation to the case at bar was present in *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981, wherein the merchandise consisted of an earthenware bowl set in a three-pronged wire holder, one prong being bent so as to form a cigarette rest. In holding that the merchandise was an entirety, the court pointed out that the holder, by itself, had no practical use; that, although it could be used with other objects, the record indicated that it was never sold separately; and that, when joined with the bowl, the individual identities of the separate parts were subordinated to the identity of the combined entity.

Also, in *F. W. Woolworth Co.* v. *United States*, 69 Treas. Dec. 1022, T.D. 48370, the court held that figures of fish, animals, and birds sold with detached wooden stands were entireties. The court pointed out that, while the figures could be used without stands, the stands were without value, unless used with the figures with which they were imported.

Further, in *Pez Haas, Inc.* v. *United States*, 46 Cust. Ct. 290, Abstract 65026, it was held that candy dispensers consisting of a "Pez" gun (made to simulate a space gun), which contained in the magazine compartment thereof a supply of "Pez" peppermints, and which dispensers in different forms were designed to promote the sale of candy

"for the various holidays," i.e., "Santa Claus," "Easter bunny," Hollowe'en witch," "Popeye the Sailor," and "space man," were entireties and properly classifiable as such for tariff purposes.

The issue of entireties preempts other classification issues here, and since that issue must, on the facts before us and the authorities noted, be resolved in plaintiff's favor, it follows that classification of the wafer tree pots must be made under the catchall provisions of paragraph 1558 as claimed. The amended protest claim for classification of the subject merchandise under paragraph 1558 as a nonenumerated manufactured article is, therefore, sustained. No evidence or argument having been adduced or advanced by plaintiff in support of the original protest claim, that claim is dismissed.

Judgment will be entered accordingly.

DISSENTING OPINION

DONLON, Judge: Few tariff issues are so controversial as that which calls for decision between conflicting claims as to whether two or more articles, imported together and with some more or less temporary attachment to each other, are to be classified as an entirety or as the separate articles which make up the alleged entirety.

On the facts of record before us, including exhibit 1 which is indeed a potent witness, being a specimen of the article at bar, I come to the conclusion that this is not an entirety for tariff purposes. I would affirm the collector's classification as two separately enumerated tariff articles. In reaching this conclusion I am well aware that, as usual in entirety cases, there is no precedent squarely in point. This very article seems not to have been previously in litigation.

The rules for judicial guidance were well stated by the late Judge Mollison of this court in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619. Discussing the question of entireties, Judge Mollison said:

At the risk of possible oversimplification of a doctrine, which by reason of complex fact situations has necessarily given rise to numerous fine legal distinctions, the gist of the decided cases, at least insofar as they are applicable to the situation before us, seems to be as follows: If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

As is the case with every rule of classification, where long-continued administrative practice, established judicial construction, or manifest

contrary legislative intent can be shown, the rule must yield. [Pp. 314, 315.]

Exhibit 1 shows that the article at bar consists of a small artificial Christmas tree, about 2 inches in height, which has its own stand or support, and that this tree and its base rest on top of a foil wrapped chocolate confection. The tree and the confection are glued together, a juncture highly impermanent and obviously intended to be torn when the confection is detached to be eaten. The article is sold as a favor.

Is a "favor" a tariff entity, as my colleagues appear to think?

In this sense "favor" is defined as a "mark or token of favor; orig., a token of love, as a lady's glove or ribbon; as, to wear a lady's *favor* at a tournament; now a token of any occasion, feast, etc.; as, a wedding *favor;* also, an emblem of party advocacy. 'Flung John of Brienne's *favor* from his casque.' *Browning.*" Webster's New International Dictionary, 2d ed., 1956. [Emphasis copied.]

A glove or ribbon is no less a glove or ribbon, for tariff purposes, because it is used as a favor. Nor, in my opinion, does a small artificial Christmas tree and a chocolate confection, sold as a "favor" for a "feast" or other occasion, take on a new identity for tariff purposes.

In a recent decision, *E. M. Stevens Corp.* v. *United States*, 56 Cust. Ct. 494, C.D. 2687, it was held that articles consisting of a heavy wire frame in a single piece wound around a brush, the back of which ends in a shoehorn which is either attached to the brush by slotting or by a screw, are not classifiable as entireties, inasmuch as the brush and the shoehorn retain their separate identities and uses, neither is predominant over the other, nor are the brush and shoehorn merged into a new and different article.

I am of opinion that *Pez Haas, Inc.* v. *United States*, 46 Cust. Ct. 290, Abstract 65026, which the majority have cited in their opinion, is not persuasive of what our decision should be on the facts here. There the facts were quite different. In my view the facts here are more nearly comparable to the situation in *Stevens, supra.* Indeed, the First Division, which decided both *Stevens* and *Pez Haas,* does not even mention the latter among the many cases cited in its unanimous opinion in the *Stevens* case.

Because the attachment between the two articles here is so patently temporary; because the nature of the confection in this "favor" is that it is intended to be consumed (as candies in a "favor" container at one's dinner place are); because the tree which remains after the confection has been eaten continues to be a usable and a complete article, like other trees which are imported without the confection; and because a favor, like a gift, is not of itself a tariff entity; I find that the tree and the chocolate confection of the imported article retain their individual identities and are not subordinated to the identity of the

combination. I would overrule the protest claim to nonenumerated entirety classification.